382 A.2d 182.

Elizabeth A. Smith *vs.* Harold R. Smith.

JANUARY 27, 1978.

Present: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. Elizabeth A. Smith and Harold R. Smith were married on July 3, 1953 and lived continuously as husband and wife until September 1972, when Harold and the couple's two sons left the marital domicile. On October 13, 1972, Elizabeth filed a miscellaneous petition for relief without commencement of divorce proceedings under G.L. 1956 (1969 Reenactment) §15-5-19 against her husband on the ground of extreme cruelty. One week later, Harold filed a petition for an absolute decree of divorce also alleging extreme cruelty. The cases were consolidated for trial on both petitions, and hearings began on June 5, 1973 and continued on a somewhat spasmodic basis until their conclusion in mid-October 1974.

The testimony presented by the litigants does not present an especially inspiring portrait of family life. Since many of the matters developed at the hearings have no bearing on the disposition of the case before us, we will forego any lengthy recitation of the history of this troubled marriage.

Harold's testimony, which was corroborated by the couple's two sons, pictured Elizabeth as an individual who for no apparent reason was prone to violent outbursts that often culminated in her physically attacking the husband and the Smiths' three children. Elizabeth denied that she was the instigator of the numerous violent incidents that took place within the family and, instead, claimed that Harold would often beat her, swear at her, and denigrate her in the presence of the children. She also testified that Harold refused to give her adequate sums of money to purchase clothing for herself or food for the family. Elizabeth's version of life in the Smith domicile won testimonial support from her daughter.

The trial justice dismissed both petitions on the ground that neither Harold nor Elizabeth was free from fault, since each had contributed to the domestic chaos which is described in greater detail in the record.

Both spouses are before us on their respective appeals. Elizabeth, of course, attacks the denial of her petition, while Harold claims that subsequent to the filing of Elizabeth's appeal the trial justice erred when he denied his motion to dismiss that appeal. Harold's motion was based upon the assertion that Elizabeth had failed to comply with the pertinent court rule which requires an appellant to pay the estimated cost of the transcript. We will first direct our attention to Harold's dismissal motion, for if he is correct, we will never reach the merits of Elizabeth's appeal.

The decree denying and dismissing Elizabeth's petition was entered on June 25, 1975. Five days later, on June 30, Elizabeth filed her notice of appeal. Subsequently, on August 22, Harold moved to dismiss Elizabeth's appeal, alleging that she had failed to make a "forthwith" payment of the estimated transcript cost with the court clerk. When the motion came on for hearing, Elizabeth, her attorney, and the court stenographer testified as to the reasons for the delay.

While there is testimony which suggests that sometime in early July 1975 the stenographer estimated the cost of the transcript as being somewhere between $300 and $350, there is no evidence which indicates that she ever gave Elizabeth's attorney a fixed, definite figure showing what the estimated cost would be. Elizabeth informed the trial justice that she was unemployed and that her only source of available funds was a bank account which showed a balance of $400. This money, she said, was reserved for emergency purposes. In his testimony Elizabeth's trial attorney told of dictating in mid-July a motion which asked that Harold pay the cost of the transcript. The dictation took place at a time when the secretarial force and the attorneys associated with the law firm representing Elizabeth were either coming from or going on their summer vacations. The law office confusion was responsible for the fact that the motion was not served and filed in the Family Court until sometime late in August.

Since December 6, 1972, most of the appellate procedures which are to be followed in the Superior and Family Courts as well as those employed in the Workmen's Compensation Commission are to be found in Rules 3, 4, 6, 7, 8, 10, 11, and 12 of this court. Rule 3(a) made it clear that the only jurisdictional requirement for obtaining appellate review was the timely notice of the filing of an appeal.[1] *Armstrong v. Armstrong,* 115 R.I. 144, 341 A.2d 37 (1975); *Hattie Carnegie Industries, Inc.* v. *Lopreato,* 114 R.I. 319, 333 A.2d 145 (1975); *Edward* v. *City of Newport,* 108 R.I. 1, 271 A.2d 464 (1970).

In the *Armstrong* case we emphasized that while a litigant will not automatically be barred from enjoying appellate review because of a failure to comply with some of the rules relating to post-appellate procedures, there is a risk that his appeal will be dismissed either here or in the trial court. Our review of actions taken in the trial court is limited to an inquiry as to whether the action taken there amounts to an abuse of discretion. In *Armstrong* we pointed out that in measuring the trial justice's discretion, we would examine the record to see if the appellant's inability to comply with the rules is " 'due to causes beyond his control or to circumstances which may be deemed excusable neglect.' " 115 R.I. at 146, 341 A.2d at 39.

Rule 10 specifies that an appellant must order a transcript of so much of the proceedings as he deems necessary within 10 days after the filing of the notice of appeal. This rule also makes it clear that the ordering and payment of the transcript must be done in accordance with the rules of practice

---

[1]On August 18, 1976, we amended Rule 3 and enacted Rule 5. The changes envisioned by this action became effective on September 1, 1976. Rule 5 calls for the payment of a $70 filing fee in all civil appeals and in those instances where relief is sought by way of any of this court's extraordinary writs with the exception of habeas corpus. Amended Rule 3 makes it clear that on and after September 1 there were to be two jurisdictional prerequisites to obtaining appellate review by this court. The prerequisites are: (1) a timely filing of the notice of appeal and (2) the payment of the filing fee prescribed by Rule 5.

of the particular trial court from which the appeal emanates. Rule 28(a) of the Family Court obligates the appellant, once the stenographer has estimated the cost of the transcript, to "forthwith deposit" with the Family Court clerk the estimated cost. In construing similar "forthwith" language, we have ruled that the term "forthwith" in such a context did not contemplate an instantaneous response but did mean that the appellant must pay the transcript cost within a reasonable time after being informed as to the amount of the estimate. In determining what is a reasonable time, we have suggested that the trial justice should consider, among other factors, the length of the delay in making the deposit and whether the reasons for the delay constitute an excuse. *In re Shannon*, 112 R.I. 225, 308 A.2d 484 (1973).

Using these criteria as a guide, the trial justice, having in mind Elizabeth's financial bind, found that Elizabeth had acted with reasonable dispatch in trying to effectuate the purpose of Rule 28(a). He also observed that the summertime confusion in the law office "at worst" amounted to excusable neglect and remarked that "justice demands that the appeal be heard."[2] As noted earlier, dismissal motions of this type involve the exercise of a trial justice's sound judicial discretion. After consideration of the arguments and the record, we perceive no reason to fault the trial justice's action in denying Harold's motion.

The record is a silent witness to Elizabeth's impecunity and her husband's affluence. The June 1975 decree, in denying both petitions, contains express findings in which the

---

[2]The justice who heard Harold's motion based his denial on several grounds, one of which was his observation that "justice demands that the appeal be heard." In making this remark, the trial justice was alluding to a criterion which was set forth in *In re Shannon*, 112 R.I. 225, 308 A.2d 484 (1973), and was to be found in Super. R. Civ. P. 73(a). This rule provided that the failure of an appellant to perfect the appeal, once it had been taken, might be grounds for dismissal "unless circumstances exuse the failure and justice demands that the appeal be heard." With the adoption of our new rules came the repeal of Super. R. Civ. P. 73.

trial justice observed that (1) Elizabeth had no funds to prosecute her petition or defend against her husband's petition and (2) Harold had over $100,000 in readily available assets. This finding, plus Elizabeth's testimony about her $400-plus bank account, in our opinion, constitutes a sufficient excuse for her failure to pay the cost of the transcript during the summer of 1975. Elizabeth's lack of cash should not bar her right to be heard in this court. Parenthetically, we would point out that Elizabeth's August motion for the payment of the transcript cost was not heard by the Family Court until early December 1975. It was denied, and at that time the stenographer gave a fixed estimate of $350.

Turning now to Elizabeth's appeal, we in Rhode Island subscribe to the position that a petition for divorce or a petiton for miscellaneous relief without commencement of divorce proceedings will only be granted upon a showing of clear and convincing evidence that the petitioner has not engaged in any conduct which is or has been provocative of domestic discord.[3] *Poirier* v. *Poirier,* 107 R.I. 345, 267 A.2d 390 (1970); *Pereira* v. *Pereira,* 105 R.I. 746, 254 A.2d 436 (1969); *Gomes* v. *Gomes,* 93 R.I. 87, 171 A.2d 446 (1961). Thus, conduct by a spouse which would not in itself be grounds for divorce nevertheless acts as a bar when that spouse seeks judicial assistance in changing his or her marital relationship. It was upon such a finding of fault that

---

[3]When a divorce is sought on the ground that the parties have lived separate and apart from each other for the period set forth in G.L. 1956 (1969 Reenactment) §15-5-3, the petitioner's "bad conduct" is not a complete bar to relief, but it may be taken into consideration by the trial justice as an aid in exercising the discretion given to him under §15-5-3 as to whether or not the divorce should be granted. *Nardolillo* v. *Nardolillo,* 84 R.I. 250, 123 A.2d 141 (1956); *Smith* v. *Smith,* 54 R.I. 236, 172 A. 323 (1934). We would also point out that the General Assembly at its January 1975 session adopted legislation which allows a divorce to be granted on proof of the existence of "irreconcilable differences which have caused the irremediable breakdown of the marriage." According to the statute, fault in an irreconcilable difference case is only relevant on the issues of entitlement to alimony or the custody of children, and "the acts of one (1) party shall not negate the acts of the other nor bar the divorce decree." Section 15-5-3.1.

the trial justice denied Elizabeth's petition for miscellaneous relief. On appeal, she does not dispute the fact that there was competent evidence to support the trial justice's decision or that he either overlooked or misconceived material evidence bearing upon her freedom from fault. Her sole contention is that the trial justice failed to make specific factual findings regarding how she had contributed to the erosion of the marital relationship and the absence of such findings calls for reversal of the decision.

A trial justice should state, however briefly, the reasons upon which his ultimate conclusions are based. *Lannon v. Lannon*, 86 R.I. 451, 136 A.2d 608 (1957). In the *Lannon* case the trial justice issued a one-sentence decision which read: "The petition of Florence Lannon is granted on the ground of extreme cruelty." The trial justice who heard the Smiths' petitions listened to evidence which can be found in a 1,000-page transcript. His written decision was filed some 6 months after the litigants had concluded their presentation of evidence on behalf of their respective petitions. In his decision the trial justice referred to the evidence adduced at trial and made express findings about the credibility of the witnesses. In rejecting Elizabeth's testimony, he commented on her "evasiveness" and her "running on and on." On the other hand, he classified the sons' testimony as "substantially credible" in supporting the father's claim that his wife's conduct had contributed toward the domestic chaos that enveloped the Smith household.

Recently, this court, in alluding to the trial justice's duty to be factual rather than conclusional in deciding any nonjury controversy, pointed out that the decision "does not require an exhaustive analysis of the evidence or a specific statement of all the reasons for his conclusion. * * * Instead, it will suffice if the decision reasonably indicates that he exercised his independent judgment in passing on the weight of the testimony and the credibility of the witnesses." *State v. Aurgemma*, 116 R.I. 425, 436, 358 A.2d 46, 52 (1976).

Here, the trial justice discharged his duty in an exemplary fashion. He referred to the relevant evidence and rejected that presented by Elizabeth in support of her petition. In doing so, he expressly accepted the sons' testimony, which indicated that the mother bore the blame for some of the marital strife that caused each litigant to seek recourse in the Family Court. Since the trial justice made it quite clear that Elizabeth had failed to prove her freedom from fault, her appeal must be denied.

Both Elizabeth's and Harold's appeals are denied and dismissed.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Kirshenbaum & Kirshenbaum, Alfred Factor*, for petitioner.

*John D. Lynch*, for respondent.