Donald R. LEMBO

v.

Carolyn A. LEMBO.

No. 95–369–Appeal.

Supreme Court of Rhode Island.

June 6, 1996.

Linda R. Holloway, Barrington, for Plaintiff.

Arthur Read, II, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This case comes before us on the appeal by both parties, Donald R. Lembo (the husband) and Carolyn A. Lembo (the wife), from an amended decision pending entry of final judgment and from certain orders of the Family Court. The Family Court granted, inter alia, the wife's request for an absolute divorce on the basis of irreconcilable differences which had caused the irremediable breakdown of the marriage.

We note that the extensive record in this case, which contains approximately thirty-four volumes of testimony consisting of over 1,500 pages as well as numerous exhibits and motions filed by both parties, clearly reflects the substantial length of the trial. After reviewing the record before us, we sustain the parties' appeals insofar as they relate to the issue of child support. We deny and dismiss the remainder of the husband's as

well as the wife's appeals. A brief summary of facts pertaining to the issues raised in the instant case follows.

The parties were married on October 10, 1981, and separated on March 4, 1991. They began having problems shortly after the marriage commenced, and their problems heightened around the time of the birth of their only child, Cherissa, who was born on April 20, 1987.

On April 16, 1992, the husband filed a miscellaneous petition in Family Court which would require the wife to allow the husband unsupervised visitation with Cherissa. The wife then filed a counterclaim for absolute divorce based on irreconcilable differences. On March 28, 1994, the wife filed a motion for a temporary order requesting that she be appointed the sole authority on matters of Cherissa's education. After a hearing held on that date, the Family Court granted the wife's motion. Both parties subsequently agreed to a consent order on July 20, 1994; they agreed that the wife would be awarded sole custody of Cherissa and that best efforts would be made to effectuate visitation between the husband and Cherissa.

A bench trial began in May of 1994. At a hearing held after the close of trial, the husband moved to amend his complaint; the husband sought to add, as a ground for divorce pursuant to G.L.1956 § 15–5–3, a claim that the parties had lived separately and apart for more than three years. The Family Court justice granted the husband's motion to amend.

In a bench decision rendered on August 23, 1994, the Family Court justice granted a divorce on the grounds of irreconcilable differences. The Family Court thereafter issued a decision pending entry of final judgment, which was later amended to correct typographical errors. The amended decision pending entry of final judgment was entered on October 4, 1994, nunc pro tunc September 13, 1994.

In the amended decision the Family Court justice found that the husband was solely responsible for the failure of the marriage. He described instances in which the husband was "domineering, intimidating, controlling and abusive." He also found that the husband "paid, virtually, no attention to the minor child of the marriage since her birth [and had] never fed her, changed her, bathed her, put her to bed or [given] her a bottle." The wife was therefore awarded sole and exclusive custody of Cherissa, and the husband was denied any visitation rights with the child. In accordance with their July 20, 1994 consent order, "[b]oth parties [were] directed to cooperate in a plan for counseling in order that visitation between the said minor child and the [husband] may be effectuated."

With respect to the assignment of property, the trial justice awarded one-half of the equity in the marital domicile located in North Providence, Rhode Island, to the wife. The wife was also awarded, inter alia, (1) one-half of the husband's individual retirement accounts and (2) the two family cars. The husband was awarded all the furniture located in the marital domicile, with the exception of certain items found in the dining room, and was held responsible for any bank debts.

The husband and the wife are attorneys licensed to practice in the State of Rhode Island. During the marriage the wife remained at home to take care of their child; the wife was unemployed at the time of the trial. The husband's annual income was a source of considerable dispute during the course of the litigation. The Family Court noted that "[the husband] was evasive, secretive, and untruthful in disclosing his income and assets." A forensic auditor, John F. Fahey, was therefore appointed by the court in order to determine the husband's income. After hearing the relevant testimony regarding the husband's income, the trial justice found that the husband's annual income was approximately $85,000. The husband was therefore ordered to pay child support in the amount of $175 per week.

The Family Court also held the husband responsible for the payment of the forensic auditor's bill. On September 13, 1994, the Family Court held a hearing on the reasonableness of the forensic auditor's bill. The court determined that the forensic auditor's hourly rate of $55 was fair and reasonable. It therefore ordered the husband to pay the

forensic auditor's bill in the amount of $26,-707.97. The order was entered on September 23, 1994.

On September 26, 1994, the Family Court held a hearing on the matter of sanctions pursuant to a previous order dated September 29, 1993. In that order a separate trial justice had determined that judgment may enter against the husband in the amount of $200 per day for the husband's failure to comply with earlier discovery orders. The trial justice stated that "[s]uch sanction shall be calculated from September 13, 1993 and will continue until such time as discovery is complied with." Approximately one year later, in its September 13, 1994 decision, the Family Court stated that the husband had repeatedly failed to comply with its discovery orders. Therefore, pursuant to its September 29, 1993 sanction order, the Family Court subsequently entered a separate order fixing judgment against the husband in the amount of $68,800; this amount reflects sanctions imposed upon the husband at $200 per day from September 13, 1993, to August 22, 1994.

Each party has now filed an appeal to this court. The husband raises numerous issues on appeal, two of which are also raised by the wife. We shall first address the arguments set forth by both parties. We shall then turn to the remaining arguments raised by the husband. Further facts will be supplied as necessary in later portions of this opinion.

Both parties have appealed the Family Court justice's determination that the husband's approximate net income is $85,000. The wife contends that the Family Court justice's finding was unsupported by the record. She states that while the evidence presented by the husband indicated that the husband's income ranged from approximately $58,000 to $72,000, the forensic auditor appointed by the court testified that the husband's income was approximately $117,000. Therefore, the wife argues, there was nothing in the record to support the Family Court justice's finding that the husband's income was $85,000. The husband on the other hand challenges the Family Court justice's findings of credibility regarding the forensic auditor's testimony and argues that the Family Court justice erroneously relied on such testimony in determining his income.

▌ Given the parties' contentions, we are confronted with a situation in which there is a conflict in the evidence adduced at trial to determine the husband's income. Clearly, this raises an issue which is for the determination of the Family Court justice in the first instance. In resolving such an issue, "[a] trial justice should state, however briefly, the reasons upon which his ultimate conclusions are based. * * * [His] duty to be factual rather than conclusional * * * 'does not require an exhaustive analysis of the evidence or a specific statement of all the reasons for his conclusion. * * * Instead, it will suffice if the decision reasonably indicates that he exercised his independent judgment in passing on the weight of the testimony and the credibility of the witnesses.'" *Brum v. Brum*, 468 A.2d 924, 926 (R.I.1983) (quoting *Smith v. Smith*, 119 R.I. 642, 648, 382 A.2d 182, 185 (1978)). We stress that with respect to the credibility of the witnesses, it is the trial justice who has the opportunity to observe the witnesses as they testify and therefore is in a better position to weigh the evidence and to pass upon the credibility of the witnesses than is this court. It is therefore the established policy of this court to allow the findings of fact made by the trial justice to remain undisturbed on review unless it can be shown that he or she was clearly wrong. *See Wrobleski v. Wrobleski*, 653 A.2d 732, 734 (R.I.1995); *Marcotte v. Marcotte*, 102 R.I. 312, 314, 230 A.2d 429, 430 (1967).

▌ In the case before us we are of the opinion that the Family Court justice was not clearly wrong in resolving the issue of the husband's income. The Family Court justice referred to the relevant evidence and rejected that presented by the husband. Specifically, he found the husband to be untruthful and the husband's expert witnesses' opinions to be based on inadequate records supplied by the husband. In rejecting the husband's testimony, he expressly accepted the wife's testimony, which indicated that the husband incorrectly reported his income on his federal tax returns. The Family Court justice then turned to the testimony of the forensic audi-

tor appointed by the court to investigate the extent of the husband's income. As the record indicates, the forensic auditor conducted an extensive review of the husband's finances and found that the husband "had significant underreporting of his income to the Internal Revenue Service in the last three years." Although the forensic auditor concluded that the husband's income was at least $117,000, the Family Court justice made it quite clear that the husband's income was uncertain and that any financial records were lacking and inadequate. In these circumstances we are not persuaded by either parties' contentions that the Family Court justice erred in concluding that the husband's income was approximately $85,000. Since it appears that the Family Court justice's findings were based on an extensive review of the evidence adduced at trial, we are of the opinion that his findings of fact in this instance were not clearly wrong.[1]

The parties next challenge the Family Court justice's determination regarding child support. Specifically the husband argues that the Family Court justice erred in determining child support without a child-support-guideline worksheet as required by an administrative order of the Family Court. For the reasons below, we remand this case to the Family Court for consideration of the information contained in the parties' worksheet.

■ This court had previously considered the issue of child support in the instant case. *See Lembo v. Lembo,* 624 A.2d 1089 (R.I. 1993). In that opinion we stated that the awarding of child support is governed primarily by G.L.1956 § 15–5–16.2. We then reviewed the Family Court's administrative order which adopted a uniform approach to establishing child-support orders. As the administrative order provided, the guidelines "shall apply to all child support orders * * * including temporary and final orders, and orders entered by agreement of the parties." *Id.* at 1091. We found that:

"In determining the precise amount of child support to be paid by the noncustodial parent, the trial justice is required under the administrative order to consider the Child Support Guidelines Worksheet (worksheet) relating to the parties' monthly adjusted gross incomes. The administrative order states that

'[t]he Child Support Guidelines Worksheet must be utilized and filed in the case record prior to or at the hearing on support, *or at the time of entry of a support order without a hearing.* The moving party or his/her attorney has the primary responsibility to complete the Worksheet and file it with the Court prior to or at the time of the support hearing.'

*It is evident that § 15–5–16.2, read in conjunction with the administrative order, requires that the Family Court justice first review the prescribed worksheet to determine the base level of a child-support order that the noncustodial parent would be ordered to pay.*" (Emphasis added.) *Id.*

The Family Court justice may thereafter deviate from the recommended child-support order if he or she finds that the calculated amount would be inequitable to the child or to either parent. *Id.*

■ In the instant case the Family Court justice stated in his bench decision that "[b]ased upon the child support guidelines, [the husband's] recommended child support order would be $214 per week. However, the Court will give him credit for the health insurance that he is to pay, as well as the anticipated medical and counseling expenses not covered by insurance, and the Court will order that he pay child support in the amount of $175 per week."[2] Although the Family Court justice correctly relied on the child-support guidelines, it is unclear whether he had before him a child-support-guidelines worksheet when determining the amount of child support. The record before us indicates that at a hearing held on Sep-

---

1. We note that any remaining assignment of error by the husband pertaining to this issue is without merit.

2. The Family Court justice repeated this finding in his amended decision pending entry of final judgment.

tember 13, 1994, approximately twenty days after the Family Court justice rendered his bench decision, the wife attempted to file a child-support-guidelines worksheet. However, upon the husband's objection, the Family Court justice refused to mark the worksheet as an exhibit. It appears therefore that the Family Court justice was bereft of the necessary worksheet when determining the amount of child support. It is necessary then to remand the matter to the Family Court to consider the information contained in the parties' completed worksheet submitted pursuant to the Family Court's administrative order. Accordingly, with respect to the husband's remaining assertions and the wife's contentions that the Family Court justice erred in calculating the amount of child-support we shall defer ruling on such issues until the Family Court justice examines the parties' child-support-guidelines sheet upon remand.

We shall now turn to the remaining issues raised specifically by the husband. On appeal the husband challenges the Family Court's orders imposing sanctions upon him for discovery violations and requiring him to pay the forensic auditor's fees.

Rule 37(b) of the Family Court Rules of Procedure for Domestic Relations provides the court with a smorgasbord of sanctions for situations in which the court is presented with a party's failure to comply with a discovery order pursuant to Rule 37(a). "We reverse a trial justice's decision to impose sanctions for Rule 37 violations only when we find that he or she has abused his or her discretion." *Senn v. Surgidev Corp.*, 641 A.2d 1311, 1318 (R.I.1994).

■ In the present case we are of the opinion that the Family Court did not abuse its discretion by imposing sanctions upon the husband. In its September 29, 1993 order, the Family Court indicated that "[j]udgment may enter in favor of [the wife] and against [the husband] in the amount of $200.00 a day for his failure to comply with earlier orders compelling discovery." It further stated that "[s]uch sanction shall be calculated from September 13, 1993 and will continue until such time as discovery is complied with, as shall be found by this Court."

The record is replete with examples of the husband's failure to comply with the discovery process. After a trial on the merits the Family Court summarized the husband's contumacious conduct in the following manner:

"[The husband] failed to cooperate with the forensic auditor in the conduct of the forensic review and, in fact, did everything he could to place road blocks in the auditor's path. For instance, [the husband] allegedly lost his fee income records for the years 1991 and 1992. In his report, Mr. Fahey stated 'Due to the inadequacy of Donald Lembo's records, I had to resort to secondary sources and to indirect methods in an attempt to measure the accuracy and extent of his income.'

"[The husband's] conduct, his pattern of behavior with discovery, necessitated the forensic auditor's appointment. [The husband] was evasive, secretive and untruthful in disclosing his income and assets. As a result, this Court had to appoint the forensic auditor who was forced to spend countless hours in trying to assess [the husband's] financial information in order to set a meaningful child support order.

"[The husband] has obstructed the discovery process and has flagrantly failed to provide discovery in a timely manner. In short, [the husband] has used the Court process as a technical weapon to punish [the wife], rather than as a means to expose the facts in order to obtain a fair settlement for all parties (not the least of whom is the minor child of tender years)."

Relying on the above findings, the Family Court, at a hearing held on September 26, 1994, on the issue of sanctions, concluded that the husband had failed to comply with the discovery process. Since the September 29, 1993 order "remain[ed] in full force and effect," the Family Court granted the wife's request for sanctions. In these circumstances we are of the opinion that the Family Court justice did not abuse his discretion by imposing sanctions for discovery violations upon the husband.

■ The husband also argues that the Family Court justice erred in requiring him to pay for the forensic examination because

the forensic auditor's actual billing statements were never submitted. The husband also argues that the forensic auditor was not qualified to do the job. We find these contentions to be wholly without merit. The husband's contentions merely attack the Family Court justice's findings, which we have consistently held would not be disturbed on appeal unless the trial justice was clearly wrong or has overlooked or misconceived material evidence. *Veach v. Veach*, 463 A.2d 508, 510 (R.I.1983). Upon review of the record before us, we are not persuaded by the husband's contentions that the Family Court justice's findings were clearly wrong or that he overlooked or misconceived any material evidence. We therefore reject the husband's challenge in this instance.

In a related claim the husband argues that since the Family Court justice had already punished him for his noncompliance with discovery by ordering him to pay the forensic auditor's fee, a subsequent imposition of sanctions for discovery violations amounts to "double punishment." Upon review of the record before us, we are of the opinion that the husband has waived his right to raise this issue. It is "a well-established principle that this court will consider only those matters that have been properly raised in the court below." *Veach*, 463 A.2d at 509.

In the present case there is nothing in the record to indicate that the husband brought this matter to the attention of the Family Court justice. On September 13, 1994, the Family Court ordered the husband to pay the forensic auditor's fee. Approximately thirteen days later, on September 26, 1994, the Family Court held a hearing on the issue of sanctions. Nowhere in the transcript of that hearing did the husband raise the issue of double punishment to the Family Court justice. Accordingly we find that the husband has waived his right to raise this issue on appeal. *See Cok v. Cok*, 479 A.2d 1184 (R.I.1984); *Brum v. Brum*, 468 A.2d 924 (R.I.1983).

The husband next argues that the Family Court justice erred by failing to grant a divorce on the ground that the parties had lived separate lives apart from each other for three years pursuant to G.L.1956 § 15–5–3. We note that nowhere in the husband's sixty-page brief or in his reply memoranda does he refer us to some place in the transcript where he made known to the Family Court justice the objection that he is presently arguing before us.

■ At trial the Family Court was presented with a claim for divorce based on two grounds: (1) irreconcilable differences pursuant to G.L.1956 § 15–5–3.1 and (2) living separately and apart for three years pursuant to § 15–5–3. The Family Court granted an absolute divorce to the parties on the ground of irreconcilable differences only. There is no indication in the record that the Family Court considered or addressed the husband's claim for a divorce on the ground that the parties had lived separately and apart for three years pursuant to § 15–5–3. Moreover, there is nothing in the record to indicate that the husband objected to the Family Court's failure to grant his petition for divorce pursuant to § 15–5–3 or that he objected to the Family Court's decision to grant a divorce based on irreconcilable differences.[3] When, as here, no express ruling has been made by the Family Court justice on one ground of divorce and no objection was raised by the complaining party to the failure of the Family Court justice to grant the party's divorce on that specific ground, we shall rely on our well-established principle that issues not raised at the trial level will not be considered for the first time on appeal in this court. *Meegan v. Meegan*, 60 R.I. 131, 134, 197 A. 221, 222 (1938) ("[n]o express ruling was made by the trial justice on the ground of desertion, which also was alleged in the petition and relied on by the petitioner at the trial; and no exception was taken by her to the failure of the trial justice to grant her petition on that ground also [and][i]n a similar situation it was held that the ground upon which no ruling was made by the trial justice was not before this court"). *See also Brum v. Brum*, 468 A.2d 924 (R.I.1983);

---

3. In fact at a hearing held after the close of trial the Family Court granted the husband's request to amend his complaint to include a claim of divorce on the ground of irreconcilable differences.

*Mailloux v. Mailloux,* 463 A.2d 192 (R.I. 1983).

The husband next contends that the Family Court justice incorrectly assigned property pursuant to G.L.1956 § 15–5–16.1. Specifically, the husband argues that the Family Court justice failed to identify which assets were marital assets prior to making an equitable distribution. The husband also asserts that the Family Court justice considered only the husband's bad conduct in reaching his decision and ignored the statutory factors enumerated in § 15–5–16.1. We note, however, that there is nothing in the record to indicate that the husband objected to the Family Court's determination regarding the assignment of property.

■ As with his previous assignment of error, the husband has failed to refer us to some instance in the record where he made known to the Family Court justice the objection that he is presently arguing before us. At a September 13, 1994 hearing held after the trial on the merits, the husband was given the opportunity to question or to object to the Family Court justice's determination at issue. The husband, however, failed to do so. Instead the sole issue raised at that hearing regarding the court's assignment of marital assets was whether the division of the husband's retirement accounts included his Keogh plan and his 401K plan. Nowhere in the record did the husband specifically indicate that the Family Court justice improperly assigned the marital assets. Because this matter was not raised at the trial level, the husband has waived his right to raise this issue on appeal. Nevertheless, upon a review of the record before us, we are not persuaded by the husband's contentions that the Family Court justice abused his discretion in the instant matter. *See Thompson v. Thompson,* 642 A.2d 1160, 1162 (R.I. 1994).

The husband's final argument on appeal concerns the Family Court's decision to grant a temporary order restraining the husband from having any direct contact with his daughter's school. Upon a close review of the record before us, it appears that the husband's contention in this instance is moot.

After a hearing held on March 28, 1994, the Family Court ordered, inter alia, the following:

"(2) the [husband] is to receive copies of all report cards and other school reports sent by the school to the defendant.

"(3) the [wife] is ordered to communicate to the [husband], in advance, any significant education decisions concerning the parties' minor child's educational plans which she makes. By 'significant education decisions' the Court means decisions such as holding Cherissa back a grade or having her skip a grade.

"(4) the [husband] is restrained and enjoined from directly contacting St. Margaret's School concerning his daughter."

The husband and the wife subsequently entered into a consent order on July 20, 1994, wherein the wife was awarded sole custody of Cherissa. Both parties also agreed that best efforts would be made to effectuate visitation between the husband and Cherissa. After the action proceeded to trial, the Family Court issued its decision on September 13, 1994, which, inter alia, approved the July 20, 1994 consent order. It therefore awarded the wife sole and exclusive custody of Cherissa and granted the wife "the right to make all major decisions concerning Cherissa's health, education and welfare, subject to the terms and conditions of the stipulation between the parties."

It appears from the course of the proceedings in Family Court that the temporary restraining order is no longer in effect and binding on the parties. Rather both parties are bound by the Family Court's decision entered on September 13, 1994. In that decision, as noted earlier, the Family Court awarded the wife sole custody of Cherissa, which includes, inter alia, the right to make all decisions regarding Cherissa's education. The Family Court clearly indicated that such rights are subject to the terms and conditions of the July 20, 1994 stipulation entered into by both parties subsequent to the granting of the temporary restraining order. Accordingly both parties were directed to "cooperate in a plan for counseling in order that visitation between said minor child and the [husband] may be effectuated." Hence, it

appears that any issues arising out of the temporary restraining order are now moot.

We are nevertheless of the opinion that the Family Court justice did not abuse his discretion in granting the temporary order at issue. We have stated that Family Courts have the "power to enter such decrees and orders as may be necessary or proper to carry into full effect all the powers and jurisdiction conferred upon it by law." *Goldstein v. Goldstein*, 109 R.I. 428, 430, 286 A.2d 589, 591 (1972) (discussing the Family Court's power to hold an individual in contempt). In the instant case the Family Court, mindful of the best interests of the child, correctly granted the order at issue. We therefore disagree with the husband's contentions that the Family Court erred in granting the temporary restraining order. The husband's final argument on appeal is therefore denied and dismissed.

For the reasons stated herein, the parties' appeal is sustained in regard to the issue of child-support. As we stated earlier, the Family Court must consider, on remand, the information contained in the parties' completed child-support-guidelines worksheet when determining the amount of child support. We deny and dismiss the remainder of the husband's as well as the wife's appeals. A clear examination of the extensive record before us persuades us that both the husband's and the wife's contentions in regard to these alleged errors are without merit. Accordingly the papers of this case are remanded to the Family Court for further proceedings in accordance with this opinion.

WEISBERGER, C.J., and LEDERBERG, BOUCIER and FLANDERS, JJ., concur.