David ILLAS, Jr., et al.

v.

Theodore PRZYBYLA, et al.

No. 2002–396–Appeal.

Supreme Court of Rhode Island.

June 10, 2004.

David Illas Jr., Pro Se, for Plaintiff.

Kathleen M. Daniels, Esq., for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

FLAHERTY, Justice.

## OPINION

Human experience usually finds the spinner of deceit ensnared in his own web. Here, however, the duplicity of Elvis Ramos resulted in the arrest and detention of an innocent person, the plaintiff, David Illas, Jr.[1]

The following facts are undisputed. David Illas, Jr. (Illas) and Elvis Ramos are cousins. On the morning of December 9, 1991, Ramos was operating a motor vehicle whose loud muffler resonated in the ears of a Scituate police officer. Intending to deal with this offense, the officer pulled him over and asked for identification. Ramos's license to drive, however, had been suspended. Apparently hoping to avoid being charged criminally, Ramos elected to keep his own identity a secret and, instead, told the officer that he was David Illas, Jr.

Ramos's cunning backfired when the officer's routine check on David Illas, Jr. revealed that he, too, had a suspended driver's license. Believing that Ramos was Illas, the officer therefore arrested him for operating a motor vehicle on a suspended license. Later that day, Ramos was arraigned before the Sixth Division District Court. Ramos continued to assume his cousin's identity before the judge as well, and he entered a plea of *nolo contendere* as David Illas, Jr. A sentencing date was scheduled for January 9, 1992, and "David Illas, Jr." was required to appear. Ramos, however, failed to appear—either as himself or as his cousin—on that date. As a result, the district court judge ordered a bench warrant to be issued against Illas.

To that point, it appeared that Ramos's trickery had allowed him to skirt the law, even at the risk of jeopardizing Illas. However, rather than accept his recent contact with law enforcement as a sign to travel a more reputable path, he flouted the law and continued to drive without a valid license. On January 30, 1992, having continued to tempt fate, Ramos was stopped for another traffic violation, this time by Warwick police. Faced with the same crisis of character, Ramos again identified himself as David Illas, Jr., despite knowing that the latter had failed to appear in court on January 9, 1992. This time, however, he perhaps outsmarted himself, because a Warwick police inquiry revealed the outstanding warrant that had been issued from the Sixth Division for David Illas, Jr. The officer, believing that Ramos was Illas, then arrested him on the outstanding warrant.

Subsequent to his arrest, but before appearing before the Sixth Division District Court for this second offense, Ramos finally admitted that he had misled the officers on both occasions by using his cousin's name. He then properly identified himself. On January 31, 1992, he appeared before the district court and acknowledged his true identity. After learning that Ramos was the actual driver of the vehicle and that he had used his cousin's name, the judge, pursuant to Rule 48A of the District Court Rules of Criminal Procedure, dismissed the charge against Illas for driving on a suspended license. Additionally, the bench warrant that had been issued for Illas was withdrawn; the dis-

---

1. "Oh! What a tangled web we weave/When first we practise to deceive!" Sir Walter Scott, *Marmion,* Canto vi, stanza 17.

trict court notified the Scituate Police Department of that fact that same day.

Illas, who had been living in California during the period of Ramos's scheming, returned to Rhode Island in 1993 and soon learned of his cousin's misdeeds. In an effort to assure himself that the prior warrant for his arrest would not haunt him, he visited both the Scituate and Warwick Police Departments. According to Illas, a Scituate officer provided him with police reports that indicated that the original complaint against him had been dismissed and that the warrant for his arrest had been withdrawn.

On April 10, 1999, the web earlier spun by Ramos enmeshed Illas. On that day, Warwick police questioned Illas concerning another matter that they were investigating. A police check revealed that the warrant originally issued in January 1992 was still outstanding. Warwick police then arrested Illas and held him overnight. The next day, he was transported to the Adult Correctional Institutions, where he spent another night in custody. The following morning, April 12, 1999, he was taken to the Sixth Division District Court and detained in a holding cell until the afternoon, at which time he was brought before a judge. The judge reviewed the case file, which indicated that the warrant had been withdrawn in January 1992 and that the case had been dismissed, despite the fact that the court's computer system did not show that the warrant had been quashed. There being no charge against Illas, he was released.

On February 7, 2001, Illas, his wife Jacqueline, and their two minor children, filed suit, alleging negligence against the town, the state, and the clerk of the Sixth Division District Court. They sought damages suffered as a result of Illas's arrest and detention. On February 11, 2002, the town moved for summary judgment. At a hearing on June 4, 2002, the motion justice granted the town's motion, and a final judgment *nunc pro tunc* was entered that day pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.[2] Subsequently, a notice of appeal was timely filed.[3] For the reasons set forth below, we affirm the entry of the judgment.

### Standard of Review

We review the granting of a summary judgment motion on a *de novo* basis, applying the same criteria used by the trial justice. *Oberlander v. General Motors Corp.*, 798 A.2d 376, 378 (R.I.2002) (per curiam) (citing *DeCarli v. Webber*, 784 A.2d 288, 290 (R.I.2001)). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleading or on conclusions or legal opinions." *Id.* (quoting *DeCarli*, 784 A.2d at 290). "Only when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's order granting summary judgment." *George v. Fadiani*, 772 A.2d 1065, 1067 (R.I.2001) (per curiam) (quoting *Kiley v. Patterson*, 763 A.2d 583, 585 (R.I. 2000)). We also review *de novo* a trial justice's findings on questions of law. *Id.*

2. The plaintiffs' claims against the state and the clerk of the Sixth Division District Court are still pending before the Superior Court.

3. Although plaintiffs' counsel represented them at the hearing, and wrote a memorandum on their behalf to this Court, counsel did not appear at oral argument. Instead, Illas appeared on behalf of all plaintiffs and informed the Court that they would be resting on the memorandum.

(citing *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I.2000)).

## Analysis

■ The plaintiffs argue that the motion justice improperly ruled as a matter of law that the Town of Scituate had no duty to cancel and remove the entry of the bench warrant against Illas from the law enforcement computer systems. They maintain that Illas's arrest, and their subsequent injuries, were foreseeable consequences of the town's failure to ensure that the warrant was deleted from those systems. They further submit that the town assumed a special duty to Illas in 1993, when he was informed at the Scituate police station that the matter had been resolved and that he was in no danger of being arrested relative to the warrant. The town responds that it is neither under a duty to cancel and recall bench warrants nor to ensure that individuals will not be arrested on withdrawn warrants. Because plaintiffs' complaint does not identify a recognizable duty running from the town to Illas, the town argues that the complaint must fail.

■ "To state a viable action for negligence, the complainant must allege facts showing the existence of a legal duty of care owed by the defendant to the plaintiff." *Volpe v. Fleet National Bank*, 710 A.2d 661, 663 (R.I.1998) (citing *Ferreira v. Strack*, 636 A.2d 682, 685 (R.I.1994)). "Whether a duty of care runs from a defendant to a plaintiff is a question of law for the court to decide." *Id.* (citing *Hennessey v. Pyne*, 694 A.2d 691, 697 (R.I. 1997)). "If [the court determines that] no such duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Id.* (quoting *Ferreira*, 636 A.2d at 685).

In the present case, plaintiffs failed to demonstrate that the town had a duty to delete the warrant from the computer systems or to notify other police departments of its cancellation. The plaintiffs' complaint merely asserts that after the District Court judge canceled the warrant, the town then had a duty "to cancel and recall the bench warrant which had been issued * * * and to properly maintain current and accurate police records to reflect same including deletion of said Plaintiff's name from any state and/or national computer information system or other system reflecting outstanding warrants." However, according to the amended answers to plaintiffs' interrogatories filed by Alice Albuquerque, Administrative Clerk of the Sixth Division District Court, when a District Court judge cancels a warrant, the case file then goes to the bench warrant clerk, who in turn enters that information into the District Court bench warrant system. Finally, "[t]he police department would be sent the information that the warrant was withdrawn if the original bench warrant was not returned to the district court office."

Nothing in the record before us contradicts Albuquerque's answers. The plaintiffs neither presented evidence that the town owed any duty to Illas to ensure that other municipalities were notified that the warrant had been withdrawn nor have they cited to any authority to support their assertion. Because a party opposing a motion for summary judgment has the burden of submitting competent evidence to support the proposition that a disputed issue of material fact exists, the motion justice properly found as a matter of law that the town did not have a duty to ensure that the warrant had been removed from any computer system.

■ The plaintiffs contend that they have raised genuine issues of material fact as to the town's nonfeasance in failing to remove the bench warrant, which caused

Illas to be falsely imprisoned. They argue that they have satisfied the "essential element" of false imprisonment that the arrest was made under a void process. We do not agree, however, that plaintiffs have demonstrated false imprisonment.[4] A necessary element of false imprisonment is an intention to confine. *Beaudoin v. Levesque*, 697 A.2d 1065, 1067 (R.I.1997) (per curiam). Here, the Town of Scituate did not arrest and imprison Illas; the City of Warwick did. The record is utterly devoid of any evidence that the town either itself intended to imprison Illas or intended that Warwick imprison him.

 The plaintiffs also argue that the town acted negligently by failing to verify Ramos's identity when he was first stopped by its police officer. The town counters that the applicable statute of limitations, G.L.1956 § 9–1–25, bars such a claim. Section 9–1–25 provides:

"When a claimant is given the right to sue the state of Rhode Island, any political subdivision of the state, or any city or town by a special act of the general assembly, or in cases involving actions or claims in tort against the state or any political subdivision thereof or any city or town, the action shall be instituted within three (3) years from the effective date of the special act, or within three (3) years of the accrual of any claim of tort. Failure to institute suit within the

three (3) year period shall constitute a bar to the bringing of the legal action."

This Court has interpreted the term "accrue" in this context in three ways: (1) the statute runs from the time the negligent action occurred; (2) the statute runs at the time the injury first became apparent; and (3) the statute runs at the time the plaintiff discovered the injury or, through reasonable diligence, should have discovered it. *Lee v. Morin*, 469 A.2d 358, 360 (R.I.1983).

Even if Scituate police were negligent in failing to confirm Ramos's identity when they first arrested him, Illas's answers to interrogatories reveal that he was aware of this negligence in 1993, when he visited the Scituate police station to allay his fears of possible arrest. The negligent act had already occurred and Illas, obviously, was aware of it. Under any interpretation, the statute of limitations contained in § 9–1–25 for actions against a governmental entity began to run at that time and expired in 1996. The plaintiffs did not bring the present action until 2001. Therefore, we hold that the statute of limitations applicable to plaintiffs' action expired before they filed their claims against the town.

 We note that Illas's wife and two minor children each allege in the complaint claims for loss of society against the town. At the hearing, the motion justice "grant[ed] summary judgment as it relates

---

**4.** Relying on *Powers v. Carvalho*, 117 R.I. 519, 526, 368 A.2d 1242, 1246 (1977), plaintiffs assert in their memorandum that "the essential element of false imprisonment is that the arrest complained of is made without legal process or under a void process." The plaintiffs' reliance on *Powers*, however, is misplaced. In that case, the ultimate question presented by that aspect of the appeal was "[w]hen does a private citizen become liable in an action for false imprisonment where the arrest and detention are effectuated by the police because of information supplied by the citizen?" *Id.* at 527, 368 A.2d at 1247. We

did not, therefore, reiterate in *Powers* all the elements of false imprisonment that a plaintiff must prove. While it is true that a plaintiff must show that he was detained without legal justification, he also must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Beaudoin v. Levesque*, 697 A.2d 1065, 1067 (R.I.1997) (per curiam) (quoting *Dyson v. City of Pawtucket*, 670 A.2d 233, 239 (R.I.1996)).

just to the Town of Scituate." Although the motion justice did not reference the other family members, their complaints were dismissed with the grant of summary judgment because their claims were derivative of the underlying cause of action. *See Hennessey*, 694 A.2d at 696; *see also Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 353 (R.I.1994) ("a cause of action for loss of consortium 'arises from' the injured spouse's injury and depends on the success of the underlying tort claim").

These additional plaintiffs are referred to, along with Illas, as "appellants" in their memorandum. However, they did not perfect their purported appeal from the judgment. Although linked to the injured person's cause of action, derivative claims such as these are separately appealable issues. *See Hennessey*, 694 A.2d at 696 (citing *Normandin v. Levine*, 621 A.2d 713, 716 (R.I.1993)). The court file in the present matter contains only one notice of appeal from the grant of summary judgment and, moreover, it indicates that only one filing fee was paid. Pursuant to Article I, Rule 5(a) of the Supreme Court Rules of Appellate Procedure, every person appealing from a judgment in a civil case must pay a filing fee. *See also Wolf v. National Railroad Passenger Corp.*, 697 A.2d 1082, 1084 n. 1 (R.I.1997) ("[w]here there are multiple aggrieved parties who seek to appeal, each must pay a separate filing fee to prosecute their appeals properly"). The payment of the proper filing fee is a prerequisite to a valid appeal. *Martin v. Lilly*, 505 A.2d 1156, 1160 (R.I. 1986) (citing *Smith v. Smith*, 119 R.I. 642, 645, n. 1, 382 A.2d 182, 183, n. 1. (1978)). Therefore, Illas's wife and children never properly appealed from the summary judgment.[5]

Undoubtedly, Illas should not have had to endure an arrest and incarceration, however brief. Nonetheless, because the record does not demonstrate any actionable negligence on the town's part, it cannot be held liable to the plaintiffs. The plaintiffs have failed to demonstrate any factual disputes that would allow their actions against the town to survive the motion for summary judgment. After reviewing the evidence in the light most favorable to the plaintiffs, we agree with the motion justice that no genuine issue of material fact exists and that the town was entitled to summary judgment.

## Conclusion

For the reasons stated above, we affirm the motion justice's granting of the town's motion for summary judgment. The papers in this case are remanded to the Superior Court.

---

5. If the additional plaintiffs' appeals were not procedurally defective and, rather, were properly before us, they nonetheless would fail on two fronts. First, our holding with respect to David Illas would be dispositive because these other claims are derivative. Second, plaintiffs' memorandum neither articulates any argument to support these derivative claims nor distinguishes among the four plaintiffs. The memorandum broadly concludes that the "[a]ppellants have demonstrated that the Defendant Town of Scituate did owe a special duty to David Illas * * * [and] have shown that David Illas was falsely imprisoned * * *." The occasional reference in the memorandum to "appellants," with nothing more, is insufficient for these additional plaintiffs to preserve their claims on appeal. *See* Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure ("[e]rrors not claimed, questions not raised and points not made ordinarily will be treated as waived and not be considered by the Court"); *see also Hennessey v. Pyne*, 694 A.2d 691, 697 (R.I. 1997) (mere occasional references in briefs to multiple appellants inadequate to preserve a loss-of-consortium claim).