NORMAN LANDRUM, Plaintiff-Appellant, v. JOSEPH GONZALEZ, Defendant-Appellee.

First District (6th Division)   No. 1—92—3652

Opinion filed February 4, 1994.

Nisen & Elliott, of Chicago (Michael H. Moirano and Patricia S. Spratt, of counsel), for appellant.

Landau, Omahana & Kopka, Ltd., of Chicago (Robert J. Kopka and Andrew D. Ellbogen, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

On April 18, 1990, plaintiff, Norman Landrum, brought this two-count tort action against defendant, Joseph Gonzalez. The complaint alleged that plaintiff suffered injuries on September 24, 1988, during the course of an informal softball game. Plaintiff's complaint alleged wilful misconduct in count I and simple negligence in count II. Defendant filed a motion for summary judgment on count II of the complaint which was granted by the trial court. The parties proceeded to a bench trial on count I. Following the presentation of plaintiff's evidence, the trial court entered judgment for the defendant. Plaintiff appeals both the trial court's decision to grant summary judgment on count II of the complaint and on its decision finding defendant did not act wilfully and wantonly. The appellate court has jurisdiction pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

The record establishes that plaintiff worked at a large Chicago bakery. Once a month during the summer months a committee of his fellow employees would host a picnic at the Winchester forest preserves. Company employees, their spouses and their children were invited to play 16-inch softball at the picnics. The games were played on a grassy area where a makeshift softball diamond had been set up. The softball equipment, including the bases, were brought by those in attendance. Three or four softball games were played at each picnic with teams being chosen just before the start of each game. The players did not use athletic equipment such as mitts or protective gear. The games were not governed by any special rules beyond those generally applicable to the game of softball.

On Saturday, September 24, 1988, plaintiff and defendant played in the third softball game of the day on opposing teams. Plaintiff was the first baseman. At one point during the game defendant was a baserunner on first base. The batter hit the ball toward left field. The ball dropped in front of the left fielder and the left fielder threw the ball towards the infield. The ball was overthrown and the shortstop was unable to catch it. The ball rolled toward plaintiff, who had

moved to back up the throw. The plaintiff was injured while the defendant was advancing from first to second base. Plaintiff testified that when he was bending down to field the overthrown ball, he felt two hands on his hips and then a push.

Joe Steven was playing centerfield at the time of plaintiff's injury and witnessed the contact between the plaintiff and the defendant. At the bench trial he testified that he believed defendant had pushed plaintiff. He also stated, however, that he did not believe defendant meant to hurt plaintiff. He stated that the only way defendant could have gotten to second base was to go around the plaintiff as he was fielding the ball. Clifton Taylor, the first base coach, indicated that the contact between the players occurred "right between first and second." He also stated, however, that he did not remember whether defendant ran inside the baseline or was more towards the infield side of the line. He said that defendant, who weighed more than 200 pounds, looked like a "Mack truck." After the contact between plaintiff and defendant plaintiff stumbled and fell on his shoulder. He suffered serious injury.

In granting defendant's motion for summary judgment on plaintiff's negligence count, the trial court found that because softball is a "contact sport," plaintiff could recover only upon a showing that his injuries were caused by defendant's wilful and wanton misconduct. After the close of plaintiff's case in chief on the remaining wilful and wanton misconduct count, the trial court granted defendant's motion for a judgment pursuant to Ill. Rev. Stat. 1991, ch. 110, par. 2—1110.

Plaintiff first argues that the trial court improperly granted defendant's motion for summary judgment on count II of the complaint. The question presented is whether liability for injuries sustained during the course of an informal softball game may be predicated upon ordinary negligence, or whether wilful and wanton misconduct must be shown to permit recovery.

In Illinois, summary judgment is governed by the provisions of section 2—1005 of the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005.) Summary judgment is recognized to be a drastic remedy which is properly granted only where the movant's right to it is clear and free from doubt. (*Vicorp Restaurants v. Corinco Insulating Co.* (1991), 222 Ill. App. 3d 518, 584 N.E.2d 229.) The purpose of the summary judgment procedure is to determine whether there are any genuine issues of material facts between the parties. (*Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, 580 N.E.2d 655.) Summary judgment should be granted only if the pleading, depositions, admissions and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. *Dash Messenger Service, Inc. v. Hartford Insurance Co.* (1991), 221 Ill. App. 3d 1007, 582 N.E.2d 1257.

In order to recover in a negligence action, plaintiff must establish that defendant owed plaintiff a duty of care, that defendant breached that duty, and that plaintiff's injury proximately resulted from such breach. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358.) Although the issues of breach of duty and proximate cause are factual matters, the question of the existence of a duty is one of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.) In determining whether a duty exists, the trial court must consider whether a relationship existed between the parties which imposed a legal obligation upon one party for the other's benefit. (*Rowe*, 125 Ill. 2d at 215.) Duty is defined as "a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another." *Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 356, 514 N.E.2d 552; *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 478 N.E.2d 603.

In this case the parties dispute the proper standard of care to be applied to the defendant's conduct in running between first and second base. Plaintiff claims that defendant's conduct in colliding with him violated the defendant's general duty of "due care" applied in any negligence suit (the "ordinary negligence" standard). Plaintiff alleged in his complaint that the rules of softball required defendant to avoid the contact which ultimately injured plaintiff. Defendant responds that because the parties were engaged in a softball game in which contact between the players is common and expected, a higher standard of care must be applied, specifically the "wilful and wanton" standard first set out in *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212, 334 N.E.2d 258.

In *Nabozny* a negligence suit was brought on behalf of a high school soccer player who had been kicked in the head by an opponent during the course of a match. The evidence indicated that the defendant kicked the plaintiff in violation of the rules of the game. Nonetheless, the trial court directed a verdict in favor of the defendant. On appeal the *Nabozny* court reversed and remanded the case. The court recognized that there was a general need to protect "vigorous participation in sports" between the participants which would necessarily be chilled by applying an ordinary negligence standard of care. The court specifically rejected a claim by the defendant, however, that participants in organized sports activities must be given total tort immunity when their actions cause injury. The court instead adopted a middle position and held that the defendant could be liable for tort injury only if his conduct was deliberate or wilful, or if he

acted with a reckless disregard for the safety of the plaintiff. (*Nabozny*, 31 Ill. App. 3d at 215.) The court remanded the matter back to the trial court for a factual determination on whether the plaintiff acted wilfully and wantonly.

The appellate court has had several occasions since *Nabozny* to address the question of when an elevated standard of care is properly applied to participants who engage in athletic activities. In *Stewart v. D&R Welding Supply Co.* (1977), 51 Ill. App. 3d 597, 366 N.E.2d 1107, for example, a baseball player who was warming up in the on-deck circle swung his bat and a metal bat ring attached to the bat flew off and struck the umpire. The court indicated that an umpire in an athletic competition was owed the same duties from the other participants as the players owed one another. (*Stewart*, 51 Ill. App. 3d at 598.) The court also determined that the rule set out in *Nabozny* was not limited to cases in which injury results from an infraction of one of the safety rules of the game. Because the court believed that the plaintiff's complaint had alleged wilful and wanton conduct, however, the court remanded the matter for trial on that issue.

In *Oswald v. Township High School District No. 214* (1980), 84 Ill. App. 3d 723, 406 N.E.2d 157, the court faced the question of whether a high school basketball player that had been kicked by an opposing player could sue under an ordinary negligence theory. The court set out the *Nabozny* rule and distinguished *Stewart* by noting that the plaintiff in *Stewart* had not based his complaint upon principles of ordinary negligence. (*Oswald*, 84 Ill. App. 3d at 726.) The court then applied the *Nabozny* rule as follows:

> "While *Nabozny* held that a recognized safety rule placed a duty on all players in a soccer game to refrain from conduct proscribed by the rule [citation], we find nothing in that case supportive of plaintiff's contention that the proof of ordinary negligence will sustain an action for injury to a player where the violation of a safety rule is involved in the injury; rather, we see *Nabozny* as establishing the standard of conduct to be wilfulness or a reckless disregard of safety where an injury to a player occurs in an athletic competition involving bodily contact." (*Oswald*, 84 Ill. App. 3d at 726-27.)

The court summarized its holding as follows:

> "Because rule infractions, deliberate or unintentional, are virtually inevitable in contact games, we believe the imposition of a different standard of conduct is justified where injury results from such contact." (*Oswald*, 84 Ill. App. 3d at 727.)

*Oswald* thus established that the controlling question on whether a participant may bring a negligence cause of action against his opponent for causing an injury is whether the participants were

engaged in a "contact game." See also *Ramos v. City of Countryside* (1985), 137 Ill. App. 3d 1028, 485 N.E.2d 418 (children's game of "bombardment" was a "sporting event" requiring application of wilful and wanton standard of care).

In *Keller v. Mols* (1987), 156 Ill. App. 3d 235, 509 N.E. 2d 584, the court considered whether the parents of a child playing a game of floor hockey could be held liable under an ordinary negligence standard of care when their child injured another by shooting a plastic puck. The trial court cited the *Oswald* decision, considered the rules under which the children played their game and determined that because floor hockey was a "contact game" the application of an elevated standard of care was required. The court specifically rejected the notion that the informality of the game called for a negligence standard of care: "*Oswald* *** established that, in determining whether a sports participant may be liable for injuries to another player caused by mere negligence, the relevant inquiry is whether the participants were involved in a contact sport not whether they were organized and coached." *Keller*, 156 Ill. App. 3d at 237.

Most recently, in *Novak v. Virene* (1991), 224 Ill. App. 3d 317, 586 N.E.2d 578, the court addressed the question of whether a skier injured by another could bring a cause of action based upon ordinary negligence. The court reasoned that because a skier does not voluntarily consent to contact with other skiers and because such contact is not inevitable, skiing was not a "contact sport." (*Novak*, 224 Ill. App. 3d at 321.) The court reversed the circuit court's decision, which had granted summary judgment in favor of the defendant and remanded the case.

In this case plaintiff argues that the relevant inquiry should not be the objective question of whether the game of softball is a "contact sport," but rather, whether physical contact at this game was within the parties' subjective expectations. Plaintiff argues that because he had never seen anyone injured in one of the softball games, it is unreasonable to say that he expected bodily contact. He notes that the players' children and spouses were invited to play in the games and argues that the appellate court opinions discussed above fail to support an elevated standard of care when the game is a "recreational, family-oriented softball game."

We believe, however, that the plaintiff's arguments ignore the clear rationale of the court's opinion in *Keller* in which the court determined that whether the players were organized and coached was not relevant to the question of whether floor hockey was a "contact sport." The *Keller* decision makes clear that the issue is properly resolved by examining the objective factors surrounding the game itself, not on the subjective expectations of the parties:

"In the instant case, the parties admit their participation in a floor hockey game; their description of the game reveals the adaptation of ordinary hockey rules for their game and corroborates the common conception of hockey as a contact sport. Plaintiff, having conceded his participation in a contact sport, was precluded from recovery on a negligence claim as a matter of law. Summary judgment for defendant was therefore proper on that claim." (*Keller*, 156 Ill. App. 3d at 237.)

This is the same analysis applied here by the trial court.

■ We agree with the trial court's determination that, unlike downhill skiing or golf, physical contact is part of the game of softball. Plaintiff does not deny that the game of softball necessarily involves runners being "tagged" by opposing players; fielders inevitably collide; and players are occasionally struck with an errantly thrown ball. Moreover, the fact that the ball may be hit or thrown into the baserunner's path necessarily means that, at times, runners and fielders will collide. We conclude that the *Nabozny* rule is appropriately applied to the game of softball.

■ The second question presented by the plaintiff is whether the trial court appropriately granted a finding in favor of defendant after hearing the plaintiff's evidence at trial. In a jury trial a verdict is directed at the close of the evidence only where all evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In nonjury cases as here, however, the rule is different: "In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1110; see *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43; *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57, 349 N.E.2d 399.) We note that this rule is directly contrary to the rule applied by the trial court in jury trials in which the court reviews the evidence in the light most favorable to the plaintiff. (*Kokinis*, 81 Ill. 2d at 154.) On appeal, the decision of the trial court will not be reversed unless it is contrary to the manifest weight of the evidence. *City of Evanston*, 64 Ill. 2d at 57-58.

In this case the trial court's determination that defendant did not act wilfully or wantonly is not against the manifest weight of the evidence. The evidence presented was sufficient for the trial court to have concluded that defendant's action in running into plaintiff was merely an attempt to take second base before plaintiff could throw

the ball there and that the injuries suffered by the plaintiff were merely a result of the game itself rather than the result of wilful or wanton conduct. While plaintiff claims that defendant was at least reckless in running into him, the trial court clearly rejected this interpretation of the facts and we see nothing in the record requiring us to substitute a different judgment.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

EGAN, P.J. and McNAMARA, J., concur.