SIXTH DIVISION

                                           Filed: 06/13/97

No. 1-96-4362

GERALD ZURLA )  Appeal from the

)  Circuit Court

Plaintiff-Appellee, )  of Cook County.

)

v. )  93 L 2502

)

VICTOR HYDEL, )  Honorable

)  Robert Quinn,

Defendant-Appellant. )  Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, Gerald Zurla, alleged in a single-count complaint that defendant, Victor Hydel, negligently hit a golf ball which struck him in the head as the two men played a round of golf during a weekend trip to Florida.
(footnote: 1) Defendant filed a summary judgment motion alleging that plaintiff's allegation of simple negligence should be insufficient under Illinois law which holds participants in "contact sports" to a duty to refrain only from wilful and wanton conduct. The trial court denied defendant's summary judgment motion, but certified the question for our review under Supreme Court Rule 308. 134 Ill. 2d R. 308. We accepted the defendant's petition for leave to appeal and now address as the single issue of whether a golfer, struck and injured by a golf ball hit by another golfer, must plead and prove wilful and wanton misconduct.   

The record demonstrates that plaintiff and defendant went from Chicago to Florida with Edward Vrdolyak for a weekend of recreation that included fishing and golf. Plaintiff and Vrdolyak were experienced golfers, but defendant was a novice. The three had played one round of golf at the Lely Resort in Naples, Florida, prior to the occurrence at issue. 

During the course of their second game on March 29, 1992, plaintiff, defendant and Vrdolyak teed off on the fourth hole. The fourth hole is a straight par four and defendant's ball was 100 to 130 yards from the tee down the right side of the fairway. Defendant's experience that day indicated his shots had the natural tendency to slice, i.e., to drift from left to right.  Both Vrdolyak's shot and plaintiff's shot landed approximately 225 yards from the tee.  

The threesome first drove their carts from the tee to defendant's ball. Defendant got out of his cart. Plaintiff and Vrdolyak went on to look for their tee shots. Plaintiff and Vrdolyak told Hydel to take a club and wait until they returned before he hit his second shot. Vrdolyak and plaintiff then drove their carts to the location of their tee shots. Plaintiff parked his cart next to his ball. 

A slow-moving foursome was on the green ahead. Defendant observed them as they left the green. As plaintiff was watching the foursome move on to the fifth hole, he  walked up to the ridge of the bunker to get a clear view of the fourth green. At this moment, defendant hit his shot thinking plaintiff and Vrdolyak were safely positioned away from the green. Defendant's shot, however, did not go from left to right; instead, it flew directly at plaintiff. Plaintiff simultaneously turned his back to the green and began walking back to his cart. Defendant's shot then struck plaintiff on the right temple causing injury.

We begin our analysis of the issue presented by noting that summary judgment is a drastic remedy which is properly granted only where the movant's right to it is clear and free from doubt. 
Vicorp Restaurants v. Corinco Insulating Co.
, 222 Ill. App. 3d 518, 584 N.E.2d 229 (1991). The purpose of the summary judgment procedure is to determine whether there are any genuine issues of material facts between the parties. 
Vallejo v. Mercado
, 220 Ill. App. 3d 1, 580 N.E.2d 655 (1991). Summary judgment should be granted only if the pleading, depositions, admissions and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 
Dash Messenger Service, Inc. v. Hartford Insurance Co.
, 221 Ill. App. 3d 1007, 582 N.E.2d 1257 (1991). When the plaintiff's complaint fails to allege a legally recognized breach of duty, the trial court may properly grant summary judgment. See e.g., 
Landrum v. Gonzalez
, 257 Ill. App. 3d 942, 629 N.E.2d 710 (1994). 

The issue of the proper duty of care as between golfers is one of first impression in Illinois. Defendant argues that Illinois law should require that a golfer hit by a stray ball plead and prove wilful and wanton misconduct against the defendant. He argues that an allegation of simple negligence should be insufficient to support a cause of action in cases involving golf ball injuries because the public policy of Illinois is to promote athletic endeavors such as golf. Plaintiff responds that the proper standard of care should be the same here as in any ordinary negligence case, i.e., to exercise reasonable and ordinary care for the safety of other golfers. 

An Illinois court of review first examined the standard of care owed between participants in athletic competitions in 
Nabozny v. Barnhill
, 31 Ill. App. 3d 212, 334 N.E.2d 258 (1975). In 
Nabozny
, the plaintiff was a goalie in a soccer match. During play plaintiff caught the ball and held it to his chest while on one knee in the penalty area in front of the goal. As plaintiff held the ball, the defendant kicked plaintiff in the head. Plaintiff pleaded and went to jury trial on a simple negligence theory. At the close of the plaintiff's case, however, the trial court directed a verdict for the defendant, apparently finding that the parties owed no duty toward one another because of their  participation at the time of injury in an athletic competition. 
Nabozny
, 31 Ill. App. 3d at 213. Plaintiff appealed, arguing that the entry of the directed verdict was improper because the evidence presented at trial showed defendant had breached his duty to refrain from negligent conduct. The appellate court noted that a number of other jurisdictions prohibited recovery for an injury sustained in an athletic competition for reasons of public policy. 
Nabozny
, 31 Ill. App. 3d at 214-15. After reviewing the need "to control a new field of personal injury litigation" involving "athletes *** engaged in an athletic competition," the appellate court adopted neither the plaintiff's negligence theory nor defendant's no-duty claim. Instead, the court stated:

"It is our opinion that a player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player." 
Nabozny
, 31 Ill. App. 3d at 215.

The appellate court reversed and remanded the case for a new trial consistent with the "deliberate, wilful and with reckless disregard" standard of care.

Since 
Nabozny
, Illinois courts have recognized a distinction between "contact" and "non-contact" sports, with only the former requiring the plaintiff to prove a violation of the elevated standard of care. Thus, in 
Novak v. Virene
, 224 Ill. App. 3d 317, 586 N.E.2d 578 (1991), this court determined that ordinary negligence principles should be applied to a case in which the plaintiff was injured while he and the defendant collided while downhill skiing because skiing was not a "contact sport" for purposes of the 
Nabozny
 rule. The court's analysis in 
Novak
 establishes that, for purposes of considering the proper standard of care under the 
Nabozny
 rule, an "athletic competition" may be broadly construed to include any athletic or recreational endeavor. The case also establishes that the type of physical contact participants reasonably expect to encounter in such activities is the determining factor as to whether a negligence or higher-than-negligence standard properly applies. Because downhill skiers do not voluntarily submit to physical contact with other skiers when they proceed onto the slopes, skiers were found by the 
Novak
 court to owe one another a duty of ordinary care. 
Novak
, 224 Ill. App. 3d at 321.

In 
Landrum v. Gonzalez
, 257 Ill. App. 3d 942, 629 N.E.2d 710 (1994), in a case involving a collision between a baserunner and a fielder during a recreational softball game, the court reviewed the evolution of the 
Nabozny
 rule and noted that the rule had been widely applied to a variety of situations. The court observed that whether a player violates the rules of the game during the competition is not dispositive of the question of whether he has violated his duty of care. This is because rule infractions, both deliberate and unintentional, are inevitable in "contact games." 
Landrum
, 257 Ill. App. 3d at 946-47, citing 
Oswald v. Township High School District No. 214
, 84 Ill. App. 3d 723, 406 N.E.2d 157 (1980). The court also rejected the idea that whether the participants are engaged in a formal or informal competition is relevant to the question of the proper duty of care. 
Landrum
, 257 Ill. App. 3d at 947, citing 
Keller v. Mols
, 156 Ill. App. 3d 235, 509 N.E.2d 584 (1987). Finally, the court recognized that the basis of the 
Nabozny
 rule is whether physical contact in a particular athletic endeavor is "inevitable" and whether participants in such events can therefore fairly expect contact. 
Landrum
, 257 Ill. App. 3d at 947, citing 
Novak v. Virene
, 224 Ill. App. 3d 317, 586 N.E.2d 578. The court in 
Landrum
 concluded that the proper test under the 
Nabozny
 rule looks not to what the particular participants in the activity subjectively knew or should have known about the dangers of the game, but rather, at "the objective factors surrounding the game itself." 
Landrum
, 257 Ill. App. 3d at 947. Because participants in an informal softball game "necessarily" come into contact with one another and the ball during the course of play (
Landrum
, 257 Ill. App. 3d at 948), the court determined that a violation of the higher 
Nabozny
 standard of care was properly required. 

In 
Pfister v. Shusta
, 167 Ill. 2d 417, 657 N.E.2d 1013 (1995), our supreme court adopted the analytical framework first stated in 
Nabozny
, finding it to offer a "practical approach that is also supported by common sense." 
Pfister
, 167 Ill. 2d at 425. In finding that an informal, indoor can-kicking game resembling soccer resulted in "inherent" and "virtually inevitable" physical contact among the participants (
Pfister
, 167 Ill. 2d at 425), the court determined that the defendant's violation of at least a wilful and wanton standard of care was required before liability could be imposed (
Pfister
, 167 Ill. 2d at 427).     

Defendant argues that an analysis of the danger of being struck by an object used to play a sport or game should be treated no differently than the danger of being hit by another person's body during play for purposes of the contact-sport rule. He argues that there is always a danger of being struck by an errant shot while playing golf, as there is in many sports. He notes, for example, that in 
Savino v. Robertson
, 273 Ill. App. 3d 811, 652 N.E.2d 1240 (1995), this court determined that a player who was struck by a hockey puck which had been shot by another player was required to plead and prove an elevated standard of care. He also relies heavily upon an out-of-state opinion to support his position, 
Thompson v. McNeill
, 559 N.E.2d 705 (Ohio 1990).

In 
Thompson
, the Ohio Supreme Court considered the case of a golfer who had been struck in the head by an errant ball. The golfer sought to recover damages from the defendant based upon standard negligence principles. The Ohio Supreme Court 
determined, however, that it was necessary to fashion a special rule for sporting events because "playing fields, golf courses, and boxing rings are places in which behavior that would give rise to tort liability under ordinary circumstances is accepted and indeed encouraged." 
Thompson
, 559 N.E.2d at 707. The court stated:

"Acts that would give rise to tort liability for negligence on a city street or in a backyard are not negligent in the context of a game where such an act is foreseeable and within the rules. For instance, a golfer who hits practice balls in his backyard and inadvertently hits a neighbor who is gardening or mowing the lawn next door must be held to a different standard than a golfer whose drive hits another golfer on a golf course. A principal difference is the golfer's duty to the one he hit. The neighbor, unlike the other golfer or spectator on the course, has not agreed to participate or watch and cannot be expected to foresee or accept the attendant risk of injury. Conversely, the spectator or participant must accept from a participant conduct associated with that sport. Thus a player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct. Were we to find such a duty between co-participants in a sport, we might well stifle the rewards of athletic competition." 
Thompson
, 559 N.E.2d at 707.

The Ohio Supreme Court
 specifically rejected the "contact/no contact" distinction which our supreme court subsequently adopted in 
Pfister
: 

"The contact-non-contact distinction does not sufficiently take into account that we are dealing with a spectrum of duties and risks rather than an either-or distinction. Is golf a contact sport? Obviously, a golfer accepts the risk of coming in contact with wayward golf shots on the links, so golf is more dangerous than table tennis, for instance, but certainly not as dangerous as kickboxing." 
Thompson
, 559 N.E.2d at 709.

Thus, in the 
Thompson
 court's view, the risk of participating or watching a golfer on a golf course necessarily carries with it the reasonable expectation by the person watching or participating that injury may occur. The court therefore required the defendant to be shown to have breached an elevated standard of care, beyond negligence, before the plaintiff could recover for his injury.

We conclude the distinction between the types of games to which the 
Nabozny
 rule is properly applied and those to which it is not is more subtle than defendant or the Ohio Supreme Court's opinion in 
Thompson
 suggests. Simply because there is an inherent risk that players may accidentally touch one another is not particularly relevant to the "contact sport" inquiry. In all of the Illinois cases in which an elevated standard has been applied, the participants were engaged in an activity in which physical contact with one another, or with some physical component of the game, is part and parcel of the sport. The decision to apply an elevated standard, excusing ordinary negligence, is not only supported by the fact that the parties are aware of the inherent dangers of injury, but also because the competitive nature of contact sports leads the participants to be more physically aggressive and less careful than they otherwise would be. 

In our view, golf is simply not the type of game in which participants are inherently, inevitably or customarily struck by the ball. Unlike the contact sports recognized by the cases, the only defense of the target in golf is made by the principles of Sir Issac Newton, the natural obstacles of Mother Nature and the cunning of those who have designed the course. There is never a need for players to touch one another. Rather, golf is a sport which is contemplative and careful, with emphasis placed on control and finesse, rather than speed or raw strength. Although the game of golf certainly presents significant dangers, these dangers are more psychological than physical. Moreover, the physical dangers that exist are diminished by long-standing traditions in which courtesy between the players prevails. In such an environment, players have the time to consider the consequences of their actions and to guard against injury to those who may be in harms way. As the supreme court of North Carolina has stated:

"A golf course is not usually considered a dangerous place, nor the playing of golf a hazardous undertaking. It is a matter of common knowledge that players are expected not to drive their balls without giving warning when within hitting distance of persons in the field of play, and that countless persons traverse golf courses the world over in reliance on that very general expectation." 
Everett v. Goodwin
, 201 N.C. 734, 161 S.E. 316, 318 (1931), quoting 
Schlenger v. Weinberg
, 107 N. J. Law 130, 150 A. 434, 435, 69 A. L. R. 741.

We specifically reject the notion found in some of the recent opinions from other jurisdictions that physical contact with another player's ball is simply "part of the sport" of golf. See 
Thompson
, 559 N.E.2d at 707. Accord 
Dilger v. Moyles
, 63 Cal. Rptr. 2d 591 (Cal. App. 1 Dist., May 15, 1997); 
Campbell v. Picceri
, 5 Mass. L. Rptr. 449 (Mass. Super., 1996); 
Hill v. Bosma
, 1993 Mass. App. Div. 128 (1993). 
Adopting such a view undermines the reasonable incentive golfers have to guard against injuries to one another, ultimately becoming a self-fulfilling prophesy. Instead, we adopt the traditional "zone of danger" analysis which has historically governed golf course injury cases. See 
Alexander v. Wrenn
, 158 Va. 486, 164 S.E. 715 (1932); 
Everett v. Goodwin
, 201 N.C. 734, 161 S.E. 316 (1931); David M. Holliday, Annotation, 
Liability to One Struck by a Golf Ball
, 53 A.L.R.4th 282, 289 (1987)("It is established that *** a golfer is only required to exercise ordinary care for the safety of persons reasonably within the range of danger of being struck by the ball").

In sum, we find that the game of golf is not properly characterized as a "contact sport" for purposes of the 
Nabozny
 rule. Accordingly, a golfer injured by a golf ball need only allege and prove traditional negligence in order to recover damages, rather than wilful and wanton conduct. 

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed and the case is remanded for further proceedings.

Affirmed and remanded.

THEIS, J., and QUINN, J., concur.

FOOTNOTES
1:
Defendant does not challenge the trial court's choice of Illinois law. See 
Esser v. McIntyre
, 169 Ill. 2d 292, 661 N.E.2d 1138 (1995) (personal injury suit between Illinois residents governed by Illinois law even though injury occurred in Mexico).