Lori KILEY

v.

Steven PATTERSON.

No. 98–46–Appeal.

Supreme Court of Rhode Island.

Nov. 2, 2000.

Arlene M. Violet, East Providence, for Plaintiff.

Mark J. Faria for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Playing second base during a recreational, coed-softball-league game, the plaintiff, Lori Kiley (Kiley) injured her knee when a male base runner, the defendant, Steven Patterson (Patterson), aggressively slid into her. He did so while attempting to advance from first to second base on a batted ground ball fielded by the third baseman. Presumably, he sought to break up a possible double play and force out at second base. In throwing himself into a slide, however, Patterson raised at least one of his feet high enough off the ground to cause it to collide with Kiley's knee as he slid into second base. Kiley's amended complaint sought to recover damages for the injuries she suffered as a result of the ensuing collision.

■ Can the injured second-sacker sue the runner for "negligently, recklessly or wantonly" colliding with her and causing her injuries? Not for mere negligence, we hold. But if she can prove the runner slid into her knee deliberately or in reckless disregard of creating an unreasonable risk of injury to her, then she can seek to hold him liable for allegedly executing a so-called forbidden "take-out slide." In baseball and softball parlance, this is a maneuver in which the base runner attempts to take the infielder out of the play by sliding "into a fielder, attempting to off-balance that player and prevent his [or her] making a play."[1] Although this softball league permitted sliding, some evidence available to the motion justice indicated that take-out slides were against the rules. Still other evidence suggested that Patterson may have acted willfully or recklessly when he slid into Kiley's knee. Finally, no evidence showed that Kiley knowingly and subjectively assumed the risk that she might be on the receiving end of a deliber-

ate or reckless take-out slide when playing this sport. Thus, for the reasons batted around below, we reverse the Superior Court's summary judgment and remand this case for trial.

## Summary Judgment

In moving for summary judgment, Patterson asserted that no genuine issue existed concerning any material fact and that as a matter of law Kiley's claim should be barred because she had voluntarily assumed the risk of incurring this type of physical-contact injury while playing softball. Kiley opposed the motion, arguing that questions of fact precluded summary judgment. In a supporting affidavit, Kiley's sister, Lisa Dunning, who witnessed the incident, averred that Patterson's actions "to avoid being forced out at second went far beyond the normal play expected in a game" and were reckless and dangerous. She also stated that Patterson's feet were "high off the ground" when he made contact with Kiley's left knee. Kiley also presented an affidavit of teammate Christopher Beall. He observed Patterson sliding into second base and striking Kiley's legs with his feet. He also opined that Patterson's "conduct was uncalled for and clearly outside of the bounds of the type of game being played."

After reviewing the supplemental affidavits and other evidence presented by Kiley, the motion justice granted Patterson's motion. The court concluded that the evidence presented did not show any recklessness or intentional misconduct on Patterson's part. The motion justice ruled:

> "What was going on here, however, was something that was permitted by this sport; to wit, sliding into the base. This is not a situation where in the league rules that prevailed someone had made a determination that sliding would

---

1. Harvey Frommer, *Sports Lingo—A Dictionary of the Language of Sports* 42 (Atheneum 1979). *See also* Paul Dickson, *The New Dickson Baseball Dictionary* 492 (Harcourt Brace 1999) (defining "take-out slide" as "[a]n of-

fensive move in which a baserunner slides into a fielder in such a way as to attempt to prevent him from making a pivot for a double play.")

not be permitted in these league games. Sliding was permitted.

"The inherent nature of the slide on a close play is that it better be quick because we're talking about a runner trying to outrace the ball. That necessarily means that the runner, if the person intends to slide, had better be moving quickly, had better be moving forcefully, and had better be moving with a good aim towards the base."

The court also granted Patterson's motion on the grounds that Kiley had assumed the risk of suffering this type of injury. The motion justice found that, based upon the undisputed evidence, Kiley was a veteran softball player who knew the risks of playing softball. Thus, the court concluded, she voluntarily exposed herself to those risks, one of which was that take-out slides involving physical contact between a runner and an infielder can and do occur when a runner attempts to break up a double play or elude a force out at or near second base.

Ultimately, the court entered a final judgment in favor of Patterson, and Kiley appealed. Following a prebriefing conference, we assigned this case to the show-cause calendar to determine whether the issues raised in this appeal could be summarily decided. After reviewing the parties' legal memoranda and considering their oral arguments, we conclude that no such cause has been shown, and we therefore proceed to decide this appeal without further briefing and argument.

Kiley maintains that the motion justice should not have granted summary judgment. She suggests that the motion justice erred when she applied a recklessness standard rather than one of ordinary negligence, especially in the absence of any previous guidance from this Court on the issue. She also argues that, even assuming that a deliberate misconduct or recklessness standard applies, questions of fact existed concerning the propriety of Patterson's slide. She also contends that no evidence justified the motion justice's con-

clusion that she assumed the risks of her injury.

### Standard of Review

When reviewing a summary judgment, we do so on a de novo basis, applying the same legal criteria as the trial court. *See Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996). "Only when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's order granting summary judgment." *J.R.P. Associates v. Bess Eaton Donut Flour Co.*, 685 A.2d 285, 286 (R.I.1996) (citing *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996)). Furthermore, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions, or mere legal opinions." *Manning Auto Parts, Inc. v. Souza*, 591 A.2d 34, 35 (R.I.1991).

### Analysis

This Court has not previously addressed whether the standard of care for determining liability in cases involving co-participants in an athletic event is either a heightened recklessness or deliberate misconduct standard or one of ordinary negligence. Most other courts that have considered this issue, however, have found that:

"[T]he duty of care owed by participants in team athletic events to each other is measured not by ordinary negligence standards, but by willfulness or recklessness standards because of considerations of the participants' assumption of risk or their consenting to an invasion of personal interests or rights by taking part in the subject contest." Stanley L. Grazis, Annotation, *Liability of Participant*

*in Team Athletic Competition for Injury to or Death of Another Participant,* 55 A.L.R.5th 529, 537 (1998).

*See also, e.g., Nabozny v. Barnhill,* 31 Ill.App.3d 212, 334 N.E.2d 258, 261 (1975) (adopting reckless or willful standard); *Ross v. Clouser,* 637 S.W.2d 11, 14 (Mo. 1982) (same); *Dotzler v. Tuttle,* 234 Neb. 176, 449 N.W.2d 774, 779 (1990) (same); *Kabella v. Bouschelle,* 100 N.M. 461, 672 P.2d 290, 293 (Ct.App.1983) (same); *Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699, 703–04 (1990) (same).

We agree with and, therefore, adopt this standard of care as our own in cases like this one involving the duty owed by one player to another during a sports competition. Here, the motion justice found instructive the case of *Ogden v. Rabinowitz,* 86 R.I. 294, 134 A.2d 416 (1957) (noting that a voluntary participant in a college hazing activity—involving a paddle that was used to swat the participants—assumed the risks of injury ordinarily incident to this activity). There, this Court stated that because the parties were voluntary participants in a game or sport, "the duty of care is such that each participant assumes the risks ordinarily incident thereto," *id.* at 301, 134 A.2d at 419, including "the risk of an obvious danger or of one that is a matter of common knowledge." *Id.* at 301, 134 A.2d at 419–20 (quoting *James v. Rhode Island Auditorium, Inc.,* 60 R.I. 405, 409, 199 A. 293, 295 (1938)). *See also Crawn v. Campo,* 136 N.J. 494, 643 A.2d 600, 601, 603–04 (1994). Although we concur with *Ogden*'s assumption-of-the-risk analysis, it does not articulate the duty of care owed by athletic-event participants to one another during the course of the game, sport, or event.

■ In *Crawn,* a case more factually similar to this one, the plaintiff, a catcher in a pickup softball game, was injured when the defendant slid into him at home plate while attempting to score from second base. The New Jersey Supreme Court determined that the duty of care applicable to participants in informal re-creational sports is to avoid the infliction of injury caused by reckless or intentional conduct: "The imposition of a recklessness standard is primarily justified by two policy reasons. One is the promotion of vigorous participation in athletic activities. * * * The other reason is to avoid a flood of litigation." *Crawn,* 643 A.2d at 604; *see also Landrum v. Gonzalez,* 257 Ill.App.3d 942, 196 Ill.Dec. 165, 629 N.E.2d 710, 715 (1994) ("physical contact is part of the game of softball"). We agree with and therefore adopt the above-described heightened recklessness-or-intentional-misconduct standard as our own in cases of this kind, thereby ruling out the possibility of any recovery based upon mere negligence.

Here, however, Kiley offered evidence to support her claim that when Patterson slid into her knee with his raised foot, he either willfully intended to strike her knee or else he acted recklessly in doing so. Significantly, the softball league's commissioner, John Leistritz, testified at his deposition that a specific rule prohibited this kind of "take-out slide" and the rule itself stated that a player may be warned or ejected from a game by an umpire for executing a "take-out slide" or for using unnecessary roughness on the base paths. As the motion justice recognized, the mere act of sliding in a softball game was not against the rules of this league. But she apparently overlooked the league rule allowing umpires to warn or eject players for executing "take-out slides" or indulging in unnecessary roughness on the base paths. Thus, a reasonable jury could conclude that Patterson's slide was not only against the applicable rules but also was perhaps a bit too rough and rambunctious for this kind of recreational, coed-softball event. And the fact that at least one of Patterson's feet was raised high off the ground at the point of impact could support an inference that the runner was not only executing a sanctionable takeout slide, but that he also was acting recklessly or

with a deliberate intent to plow into a vulnerable part of Kiley's anatomy.

To be sure, Kiley was a veteran softball player. Hence, she was well aware of the risks inherent in playing this game, including the common knowledge that players may slide into one another in the course of avoiding a force out at second base. She had played in numerous softball games and was experienced at playing this particular position. As a result, she must be deemed to have assumed the normal risks of contact inherent in playing softball, including the risk that other players might negligently injure her while sliding into second base. But it cannot be concluded as a matter of law that she assumed the risk of sustaining injuries as a result of deliberate or reckless misconduct on the part of opposing players acting in violation of league rules. A boxer may assume the risk of a negligent low blow, but a deliberate punch to his groin would still be actionable.

Given this evidence and the applicable legal principles, we are of the opinion that the motion justice erred in concluding that Kiley had voluntarily and knowingly assumed the risk of incurring the injury she suffered and that no evidence existed to suggest that Patterson's conduct violated the applicable reckless and/or intentional misconduct standard of care. Rather, we hold that these are material issues of fact requiring determination by the factfinder, including a resolution of whether Patterson was merely negligent or whether he acted deliberately or in reckless disregard of injuring Kiley when he slid into her knee at second base with his foot raised high and thereby injured her in the manner alleged.

### Conclusion

We sustain Kiley's appeal, vacate the Superior Court's judgment, and remand this case for trial.