In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-4220

THOMAS BEVOLO,

*Plaintiff-Appellant,*

*v.*

ALAN CARTER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03 C 447—**William D. Stiehl**, *Judge.*

ARGUED JANUARY 4, 2006—DECIDED APRIL 20, 2006

Before CUDAHY, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* In this diversity action, Thomas
Bevolo filed suit against Alan Carter for personal injuries
he sustained during a demonstration at a martial arts
banquet. The district court ordered stricken the affidavit of
Bevolo's expert, as the expert had not been disclosed prior
to the appropriate deadline. Thereafter, it granted sum-
mary judgment for Carter. Belovo appeals both decisions.
For the reasons set forth below, we affirm.

## I. BACKGROUND

On October 23, 2003, Bevolo and his family attended a
martial arts banquet for the Christian Kajukenbo Ministry.
Bevolo, an Illinois resident, was a student of Kajukenbo, a

Hawaiian form of martial arts. Bevolo had been studying various forms of martial arts for five years; he had been studying Kajukenbo since January 2002. At the banquet, Bevolo was to be promoted to an orange belt. He was wearing his Gi, a black uniform worn by martial arts practitioners. Bevolo's class warmed up and sparred during the first thirty minutes of the banquet. During this time, while other classmates sparred with each other, Bevolo warmed up solo. The warm-up and sparring session was followed by a promotions ceremony and "[d]inner, [f]ellowship, and [p]hotos."

One of the "very special guests" from Missouri (and featured speaker) that evening was Professor Carter, a Kajukenbo expert and an 8th degree black belt. Evidently, Carter has the rare ability to "move people with his mind." After dinner, Bevolo was introduced to Carter and asked Carter to demonstrate this uncanny skill. With a group of onlookers (including Bevolo's own family) present and with cameras in hand, Carter began his demonstration. The demonstration, however, included the use of Carter's well-trained hands as well as his well-trained mind. The mood in the air was light, and Carter demonstrated various pressure points on Bevolo, including pulling his hair and touching his arms. During the demonstration, Carter was talking with the crowd while Bevolo's family took pictures. After performing several maneuvers, including two that put Bevolo on the ground, Carter hit him in the neck. Carter did not intend to injure him, but serious damage was done with that one blow. None of the previous blows or maneuvers had caused any injury.

One of the stated goals of Kajukenbo is that, "[w]hen attacked, a student's instincts will take over and the body will react to the situation, diffusing it without hesitation." Unfortunately for Bevolo, his body did not react to Carter's demonstration, nor did it make any attempt to diffuse the situation. As the old saying goes, "[i]t's all fun and games

until someone loses an eye," or in this case, until someone injures his neck and has to have a cadaver bone and a titanium plate surgically inserted.[1]

## II.  ANALYSIS

### A.  *Expert Witness Disclosure*

The court ordered that Bevolo's expert witness disclosure be filed on or before November 15, 2003. The depositions of any of his experts were to be completed by December 15, 2003. The court also set a discovery deadline for both parties of March 25, 2004. On June 2, 2004, pursuant to the parties' joint motion, the court extended the discovery deadline to August 8, 2004. In that order, the court spoke only of the discovery deadline and the deadline for filing dispositive motions. There was no mention of an extension of the expert witness disclosure deadline, nor was there any mention of an extension of the deadline for the taking of depositions of Bevolo's expert witnesses.

At no time did Bevolo complain that the court did not extend the expert witness disclosure deadline. In fact, Bevolo did not specifically request an extension of this deadline at any time. The court and Carter only caught wind of the existence of Bevolo's expert when Bevolo filed the expert's affidavit on September 21, 2004, which was attached to his response to Carter's summary judgment motion. This was much too late, said the district court, and the affidavit was ordered stricken. Bevolo now complains to us this was an abuse of discretion. We are not at all sympathetic to Bevolo's argument because the expert was not

---

[1] We are not surprised to learn Bevolo incurred more than $75,000 in damages.

"disclosed"[2] until some ten months after the appropriate deadline, and over a month after the close of discovery.

Despite the timeline described above, Bevolo argues he only missed the deadline by five days. He argues the deadline was September 16, 2004, and since he never received the court's order extending the deadline to this date, he was justified in missing the hidden deadline by only a few days. He then relies on a district court case from New York to argue the expert's testimony should have been admitted. The entire argument on this point is misplaced, however.

On November 23, 2004, the district court granted summary judgment for Carter and ordered stricken the expert's affidavit. The order contains an error and a typo. The court mistakenly stated Carter had argued to the court that the expert witness disclosure was due by September 16, 2004. This is the statement Bevolo now relies on to argue the deadline was September 16, 2004. However, the underlying motion filed by Carter stated, "In addition, on or about September 16, 2003 [not 2004] the plaintiff filed his Rule 26(a)(1) Initial Disclosures and did not identify [the expert]." The district court simply mischaracterized the argument Carter had made to the court. Bevolo cannot rely on the mischaracterization to claim now that the deadline had somehow been moved without his knowledge. The error and typo in the district court's order granting summary judgment and striking the affidavit do not change the fact that the deadline for filing the expert witness disclosure was November 15, 2003. Moreover, Bevolo suffers no prejudice by way of the court's mistake because he did not know of it.

---

[2] We hesitate to use the word "disclosed" to describe Bevolo's actions. It would be more apt to say Bevolo sprung the existence of the expert on the defense at the last minute.

Bevolo also argues he did not know he would need an expert until he read Carter's motion for summary judgment. To make such an argument shows a lack of understanding of the discovery process as well as the purpose of Federal Rule of Civil Procedure 26(a), which provides for the disclosure of expert witnesses to the opposing side in a timely fashion. There is no question Bevolo was not timely in this case; therefore, it was not an abuse of discretion for the district court to think so too.

## B. Contact Sports Exception to Negligence

We review a district court's grant of summary judgment de novo. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005) (citation omitted). Summary judgment is appropriate if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)); *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). As a federal court sitting in diversity, we apply state law "to resolve substantive questions and federal law to resolve procedural and evidentiary issues." *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir. 1994) (citation omitted); *see* 28 U.S.C. § 1332. The parties agree Illinois law applies to the substantive questions in this case.

Illinois courts have established the "contact sports exception" to negligence. Under this exception, voluntary participants in contact sports may be held liable for injuries to co-participants caused by wilful and wanton or intentional misconduct, but they are not liable for injuries caused by ordinary negligence. *Nabozny v. Barnhill*, 334 N.E.2d 258, 260-61 (Ill. App. Ct. 1975); *Oswald v. Twp. High Sch. Dist. No. 214*, 406 N.E.2d 157, 159-60 (Ill. App. Ct. 1980). "[A]

player is liable for injury in a tort action if his conduct is such that it is either deliberate, wilful or with a reckless disregard for the safety of the other player so as to cause injury to that player . . . ." *Nabozny*, 334 N.E.2d at 261. The parties agree the exception has been expanded to include unorganized, informal, and spontaneous sports activities. *See Pfister v. Shusta*, 657 N.E.2d 1013, 1014-15, 1018 (Ill. App. Ct. 1995) (applying exception to spontaneous game of kick-the-can in college dormitory); *Landrun v. Gonzalez*, 629 N.E.2d 710, 715 (Ill. App. Ct. 1994) (applying exception to informal company softball game).

Bevolo contends he did not expect, nor would a reasonable person expect, any physical contact when inquiring about Carter's ability to move people with his mind. Perhaps this may be true if the circumstances involved a magic show or some telekinetic demonstration. But that is not what we have here. The situation arose during a martial arts event. Bevolo had been coming to this same location for some time to engage in martial arts training, where physical contact with other participants was the norm. Carter was a master and instructor in the martial arts, a role that Bevolo and all the other attendees were aware. The entire evening was organized for the members of this particular group. The attendees were actually engaged in martial arts training that night, warming up, sparring with each other, and discussing Carter's role as master. A reasonable person would have understood in this context that the particular form of martial art being taught, including moving people with their minds, inherently involved physical contact. *See Landrum*, 629 N.E.2d at 714-15; *cf. Rodrigo v. Koryo Martial Arts*, 122 Cal.Rptr.2d 832, 842 (Ct. App. 2002) (explaining, in context of analogous provision of California law, that "[i]nherent in participating in—and learn-ing—[martial arts] is the risk of injury stemming from being punched, kicked or otherwise contacted by a fellow competitor or student," which includes when a student is

injured when simply waiting in line and is kicked from behind).

The way Bevolo tells the story, and his counsel demonstrated at oral argument, Bevolo was just standing in front of Carter, arms at his side with no defensive positioning, when Carter basically attacked him. But this misrepresents the record. Carter began to physically engage Bevolo. According to Bevolo's own testimony, he was forcibly taken to the ground twice through a series of maneuvers before the fateful blow to the neck was delivered. Tellingly, Bevolo did not object at any time prior to that blow. He argues no reasonable person would dare object to such a dangerous and intimidating figure's attacks. But we are unpersuaded. Bevolo did not yell "Stop it!" or make any attempt to run away or simply stay on the ground after he was (twice) taken there. Nor did he otherwise make any attempt whatsoever to stop the encounter. For example, he did not look pleadingly at the onlookers, silently asking for someone to help him. He did not yelp in pain. Even the spectators, consisting of Bevolo's own family, were laughing and taking pictures throughout the demonstration. In the end, it is Bevolo's own deposition testimony that makes it crystal clear he was a willing participant:

> Q: What did you tell him, if anything, when he was [performing the demonstration]?
>
> A: *I was going along with it. You know, we were having fun.* And I thought this was at the end of this, or maybe somewhere in there it would be the mind moving thing. (emphasis added).

Bevolo's own deposition testimony shows he had a complete understanding of the situation as well as his role as a willing participant. Therefore, the district court was correct to conclude the contact sports exception to negligence applied to this situation, and Carter could only

be liable for Bevolo's injuries if Carter's behavior amounted to wilful and wanton misconduct.

Bevolo next argues Carter's conduct was reckless, thereby making Carter liable for his injuries. As we alluded to earlier, Carter can only be liable if his conduct was "either deliberate, wilful or with a reckless disregard" for Bevolo's safety. *See Nabozny*, 334 N.E.2d at 260-61; *Pfister*, 657 N.E.2d at 1016 (defining wilful and wanton as action that demonstrates actual or deliberate intent to harm or shows an utter indifference or conscious disregard for someone's safety). Surprisingly, Bevolo's argument is unburdened by any case law citations or legal analysis. What little argument there is on the subject focuses solely on Carter's alleged recklessness. In effect, Bevolo has waived any argument concerning whether Carter's actions were deliberate. In fact, Bevolo conceded as much at oral argument when he stated Carter's acts were not intentional.

As to recklessness, once again, Bevolo's own testimony is dispositive. The mood was light, the parties were talking, and all outward appearances reflected that everyone was having an enjoyable time during the demonstration. Bevolo explained, "We were in a real good mood. He was talking with like my sister-in-law, my wife. And, you know, it was just demonstrating a personality. There wasn't any overtones of evil or anything." As for the actual blow that caused the injury, Bevolo stated, "And I don't think he hit me with any seriousness about hurting me; just that was one of those places where it's sensitive." There is simply no evidence Carter was behaving recklessly; he was performing a martial arts demonstration with a willing participant, as he had done numerous times before. This type of physical contact is inherent in martial arts training, and there is no evidence Carter evinced an utter indifference to or conscious disregard for Bevolo's safety.

## III.  CONCLUSION

For the reasons set forth above, the decisions of the district court are AFFIRMED.

A true Copy:

　　　　Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*