In the

# United States Court of Appeals
## For the Seventh Circuit

————————

No. 23-2473

MELISSA MESENBRING, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ROLLINS, INC.,

*Defendant-Appellee.*

————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-08013 — **Robert W. Gettleman**, *Judge.*

————————

ARGUED MAY 21, 2024 — DECIDED JUNE 28, 2024

————————

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge*. Derek Mesenbring, an employee of
Industrial Fumigant Company, LLC (IFC), died in the course
of his employment after inhaling a toxic dose of methyl bro-
mide. His widow, Melissa Mesenbring, sued IFC and its par-
ent company, Rollins, Inc., in Illinois state court for wrongful
death. IFC and Rollins removed the case to federal court un-
der diversity jurisdiction. Mrs. Mesenbring subsequently dis-
missed IFC from the suit, leaving Rollins as the sole

defendant. Rollins then moved for summary judgment, which the district court granted. Because we agree with the district court that Rollins is not liable for IFC's acts under Illinois law, and thus cannot be held responsible for Mesenbring's death, we affirm.

I

Derek Mesenbring, an employee of Industrial Fumigant Company, LLC (a pest management company), was scheduled for a fumigation job using methyl bromide—an odorless, colorless gas that is highly toxic to humans. Before heading to the jobsite, Mesenbring transferred the methyl bromide he needed from a large cylinder to a smaller cylinder using a transfer hose. The large cylinder continued to release methyl bromide following the transfer, causing Mesenbring to inhale a toxic dose of the fumigant when he returned to the facility. Following Mesenbring's death, IFC's parent company, Rollins, Inc., investigated the accident and implemented certain safety measures, such as adding air safety monitors and discontinuing the transfer of methyl bromide to smaller cylinders, to help prevent future injury.

As IFC's parent, Rollins has some authority to review and approve IFC's revenue goals and certain expenditures. Rollins also leased IFC's facility on behalf of IFC. But IFC manages its own day-to-day operations without Rollins's interference. IFC is responsible for determining how to achieve the revenue and profit goals that Rollins sets. Further, IFC maintains its own safety and regulatory departments (which develop and implement policies related to the use and handling of fumigants, such as methyl bromide), retains a methyl bromide specialist, and trains its employees on the safe and proper use, storage, and handling of all fumigants. In other

words, IFC is in control of its own policies and procedures on methyl bromide.

After Mesenbring's death, his widow, Melissa Mesenbring, sued IFC and Rollins for wrongful death in Illinois state court. IFC and Rollins then removed the case to federal court under diversity jurisdiction. 28 U.S.C. § 1441(b). Because IFC had been paying workers' compensation benefits to Mrs. Mesenbring, she eventually dismissed IFC pursuant to the exclusive remedy provision of the Illinois Workers' Compensation Act. But she continued seeking to hold Rollins liable for her husband's death under a limited theory of recovery recognized under Illinois law called direct participant liability. Rollins moved for summary judgment, which the district court granted. The court rejected Mrs. Mesenbring's attempt to hold Rollins liable because it did not specifically direct an activity that made the accident foreseeable, nor did it control or participate in IFC's use of and training on methyl bromide, thus foreclosing direct participant liability. Mrs. Mesenbring appealed.

## II

We review the district court's grant of summary judgment de novo, *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023), and, as a federal court sitting in diversity, we apply state substantive law, *Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006). The parties agree that Illinois law applies.

We have very little to add to Judge Gettleman's thorough and well-done order. As "a general principle of corporate law deeply 'ingrained in our economic and legal systems,'" a parent company, such as Rollins, is not liable for the acts of its

subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quotation omitted). The Illinois Supreme Court has adopted a narrow exception to this general principle of limited liability known as direct participant liability. *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007). Under that theory, a parent company may be held liable for the acts of its subsidiary if it "specifically directs an activity [] where injury is foreseeable." *Id.* Stated differently, to prevail, a plaintiff must show: "[1] a parent's specific direction or authorization of the manner in which an activity is undertaken and [2] foreseeability" of injury. *Id.* As for the first element, the parent is liable only if it "surpass[es] the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary." *Id.* A parent's or its officers' imposition of budgetary strategies (even if it amounts to mismanagement) and business policies alone are generally not enough to impose direct participant liability, so long as the subsidiary remains free to utilize its own expertise. *Id.* at 237–39. As to the second element, the parent is liable only "for foreseeable injuries." *Id.* at 237.

The district court correctly applied *Forsythe* to conclude that Rollins may not be held liable for IFC's acts under direct participant liability. Rollins did not employ "specific direction or authorization" over IFC's use of or training on methyl bromide, as is required to impose direct participant liability. *Id.* Rather, IFC retains its own methyl bromide specialist, maintains its own safety and regulatory departments, and trains its employees on how to safely use, store, and handle methyl bromide. Simply, IFC—not Rollins—is responsible for the company's policies and procedures on methyl bromide. Nor does Rollins surpass the level of control typical of a parent-subsidiary relationship. *Id.* IFC manages its own day-to-day operations without interference from Rollins.

Mrs. Mesenbring's examples of Rollins's alleged control over IFC are not enough to impose direct participant liability. For example, that Rollins is responsible for IFC's facility lease is irrelevant because we analyze a parent's control over "specific activities contributing to [a] course of action"—here, IFC's use of and training on methyl bromide—rather than a parent's involvement more generally. *Id.* Further, that Rollins sets annual revenue and profit targets for IFC likewise does not impose direct participant liability because IFC remains "free to utilize [its] own expertise" as to how to best achieve those goals. *Id.* at 238. And even if Rollins's budgetary strategies were deemed mismanagement, that alone is not enough to impose direct participant liability. *Id.* at 237.

The second element set forth in *Forsythe*—foreseeability of injury—is also absent here. *Id.* Mrs. Mesenbring largely argues that direct participant liability should attach to Rollins because it sets forth approval guidelines for IFC's expenditures. But Rollins's mere imposition of certain budgetary restrictions over IFC—without evidence that Rollins foresaw that safety would be compromised as a result—does not on its own give rise to direct participant liability. See *id.* at 240 (finding a genuine issue of material fact because the parent knew that its budgetary reductions were compromising safety). Unlike in *Forsythe*, there is no evidence here that Rollins's budgetary approval policies have caused IFC to compromise on safety (or even that IFC has failed to obtain approval on expenditures regarding methyl bromide more generally). Mrs. Mesenbring also points to Rollins's post-accident investigation and support for IFC, but Rollins's post-accident behavior does not reveal the foreseeability of Mesenbring's accident before its occurrence. Simply, Mrs. Mesenbring fails

to put forth evidence that Mesenbring's accident was foreseeable to Rollins.

In sum, we agree with the district court's well-reasoned opinion that Rollins cannot be liable for IFC's acts under a theory of direct participant liability because it did not specifically direct an activity where injury was foreseeable. Rather, Rollins's minimal level of control over IFC adhered to "a normal incident of ownership" in a parent-subsidiary relationship. *Id.* at 237.

*  *  *

Mrs. Mesenbring's counsel failed to include the district court's order on Rollins's summary judgment motion in the required short appendix, in violation of the Federal Rules of Appellate Procedure, our Circuit Rules, and our precedent. Fed. R. App. P. 30(a)(1)(A)–(C) (mandating that the appellant's appendix contain "(A) the relevant docket entries in the proceeding below; (B) the relevant portions of the … opinion; [and] (C) the judgment, order, or decision in question"); Cir. R. 30(a) ("The appellant shall submit … an appendix containing the judgment or order under review and any opinion, memorandum of decision, findings of fact and conclusions of law, or oral statement of reasons delivered by the trial court … upon the rendering of that judgment, decree, or order."); *United States v. McGhee*, 98 F.4th 816, 825–26 (7th Cir. 2024) (admonishing the appellant's counsel for failing to include the district court's rulings and reasoning in the appendix, in violation of Federal Rule of Appellate Procedure 30 and Circuit Rule 30). We remind counsel before this court to adhere to the Rules and our precedent that the appellant's short appendix must contain the lower court's opinion. The lower court's opinion does not belong in a separate appendix. Cir. R. 30(a)

("The appellant shall submit, *bound with the main brief,* an appendix containing the judgment or order under review ….") (emphasis added).

AFFIRMED